132 654
150 361
132 654
158 380
132 654
163 308
59a 70
132 654
69a 264
132 654
78a 363
79a 133
132 654
f93a ¹253
132 654
195 ¹172
d195 ¹537
197 ²251
132 654
102a ¹255
102a ²312
102a ³313
132 654
200 ¹333
132 654
202 ⁶344
104a 1 59
105a ¹402
132 654
208 ¹635
132 654
211 ¹458
132 654
212 ¹336
e212 ¹337
213 ⁶638
113a ¹268
113a 269

# THE PENNSYLVANIA COMPANY *et al.*

*v.*

# EDWIN H. ELLETT, Admr.

*Filed at Ottawa May 14, 1890.*

1. NEGLIGENCE—*in the case of a leased railroad—negligence on the part of the lessee company—liability of such company, and also of the owner company.* The grant of a franchise giving the right to build, own and operate a railway, carries with it the duty to so use the property and manage and control the railroad as to do no unnecessary damage to the person or property of others; and when injury results from the negligence or unlawful operation of the railroad, whether by the corporation to which the franchise is granted, or by another corporation, or by individuals whom the owner authorizes or permits to use its tracks, the company owning the railway and franchise will be liable.

2. A railway company using, by agreement, the road of another company, will be liable for damages resulting from its negligence, and the owner company, to whom is granted the control and management of it, will also be liable. The public may look for indemnity for injury resulting from the wrongful or unlawful operation of the road, to that corporation to which they have granted the franchise, and thus delegated a portion of the public service. And for this purpose the company whom it permits to use its tracks, and its servants and employes, will be regarded as the servants and agents of the owner company.

3. SAME—*pleading and evidence in such case—to establish the liability.* Where a railway company allows another company to use and operate its road, no other negligence than that of the corporation using the track need be alleged or proved, in order to fix the liability of the

owner company. The negligence of the lessee company is treated the same as its own.

. 4. In order to make a railway company liable for the negligence of another company using its tracks, it must be shown that such other company was running its train over the tracks of the owner company under a contract with it, or by its permission and consent. Such fact is a matter material to be proved, to fix its liability.

5. SAME—*pleading—of the declaration—in action against the owner company and the lessee company.* In an action against two railway companies, the one owning the road and the other using the same, to recover damages for negligence resulting in the death of the plaintiff's intestate, the declaration alleged that the first named company was a corporation owning and using certain railroad tracks, upon which the other defendant and other railroads ran their cars and locomotives, and that the latter company had control and occupation of said tracks: *Held,* that these allegations were sufficiently general to comprehend therein, by fair and reasonable intendment, that the latter company was so in control lawfully, or by the consent of the owner corporation, and the omission to charge so specifically was cured after verdict.

6. ARREST OF JUDGMENT—*intendment—in favor of pleader.* Before verdict the intendments are against the pleader, and upon demurrer to a declaration nothing will suffice, by way of inference or implication, in his favor. But on motion in arrest of judgment the court will intend that every material fact alleged in the declaration, or fairly and reasonably inferable from what is alleged, was proved at the trial; and if, from the issue, the fact omitted and fairly inferable from the facts stated in the declaration may fairly be presumed to have been proved, the judgment will not be arrested.

7. PRACTICE—*directing what the verdict shall be.* Where there is evidence tending to prove the plaintiff's right to recover for an injury caused by negligence, and tending to show ordinary care by the person injured, or where there is evidence tending to prove the plaintiff's case, an instruction to find for the defendant is properly refused.

8. APPEALS—*reviewing the facts—affirmance by Appellate Court.* Where a judgment against a railway company for damages for causing the death of another through negligence, is affirmed by the Appellate Court, there being evidence tending to establish the plaintiff's case, it will, in this court, be treated as conclusively settled that the company was guilty of negligence causing the death of the plaintiff's intestate, and that he was in the exercise of due and proper care.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. KIRK HAWES, Judge, presiding.

This was an action on the case, brought by Edwin H. Ellett, administrator of the estate of William R. Walkup, deceased, against the Pennsylvania Company, and the Union Stock Yards and Transit Company, railroad companies operating in this State, to recover damages for the death of the plaintiff's intestate, alleged to have been caused by the negligence of the first named company while using the track of the other company, with its consent and permission. On the trial the plaintiff recovered judgment against both defendant companies for the sum of $4500, which was affirmed by the Appellate Court. The other material facts appear in the opinion.

Mr. GEORGE WILLARD, for the appellant the Pennsylvania Company.

Mr. IRUS COY, and Mr. R. P. HOLLETT, for the Union Stock Yards Company:

The declaration contains no charge of negligence on the part of the Union Stock Yards and Transit Company, and therefore the judgment should have been arrested.

Messrs. WILLETT & JOHNSON, for the appellee:

A judgment should not be arrested for errors such, that if the attention of the trial court had been directed to them they could have been cured by amendment. Rev. Stat. chap. 7, secs. 6, 7.

It is well established that the owner of a railroad, who permits another company to use its road, is liable for the negligent act of the latter company. *Railroad Co. v. Dunbar,* 20 Ill. 623; *Railroad Co. v. Campbell,* 86 id. 443; *Railroad Co. v. Shacklet,* 105 id. 364; *Balsley v. Railroad Co.* 119 id. 68; *Railroad Co. v. Brown,* 17 Wall. 445; *Railway Co. v. Rumbold,* 40 Ill. 143.

The proprietors of two vehicles, both of which are managed so carelessly as to injure a third person by their collision, are

jointly liable for the damage done, although in no way connected in business together. *Colgrove* v. *Railroad Co.* 20 N. Y. 492; *Thompson* v. *Railroad Co.* 66 Cal. 163.

Where A lent a wagon to B and C, who each furnished a horse, and then, at their invitation, A rode with them, B driving, all three were held jointly liable for B's negligence in driving too fast. *Davey* v. *Chamberlain*, 4 Esp. 229; *Bishop* v. *Ely*, 9 Johns. 294.

The declaration is admitted to be beyond criticism as to the Pennsylvania Company, and this being true, the circumstances show that an allegation of ownership of the railroad tracks by the stock yards is all that is essential to state a good cause of action in tort against both.

Mr. Chief Justice Shope delivered the opinion of the Court:

This was an action on the case, to recover damages for negligently causing the death of William R. Walkup, and resulted in a verdict against both defendants for $4500, upon which judgment was rendered. On appeal to the Appellate Court this judgment was affirmed. Both defendants appeal to this court, and assign errors.

The errors assigned by the Pennsylvania Company relate solely to the sufficiency of the evidence to sustain the action against that company. We are not at liberty to weigh the evidence, and determine the question of fact. However, by its fifth instruction, which was refused, and which refusal is assigned for error, this appellant asked the trial court to instruct that the evidence was insufficient to warrant a verdict against said company. Upon looking into the record, it is clear there was evidence tending to show that the killing of the deceased resulted from the negligent conduct of the servants of that company in backing its train across Exchange avenue, which the deceased was attempting to cross, and that the deceased was at the time in the exercise of ordinary care for his

safety. The casualty occurred immediately in front of the entrance gates of the Union Stock Yards. At that point the Union Stock Yards and Transit Company had four railroad tracks, which from five thousand to ten thousand people passed over daily in approaching and leaving the stock yards. These tracks, running parallel, north and south, are about four feet apart. Near five o'clock of the afternoon of February 14, 1887, the deceased, with a number of other persons, came out of the stock yards gates, intending to cross these tracks on Exchange avenue, but were stopped by a freight train going north on the third track. Pausing until this train passed, the deceased, who was in the lead, stepped immediately behind the last car on to the fourth track, and was instantly struck and killed by the train of the Pennsylvania Company, backing south at the rate of about seven miles an hour. There was abundant evidence, if the jury believed it to be true, from which they might find that no warning whatever was given of the approach of the defendant's train, and that no one was on the rear of the backing train to give warning to persons about to cross the track. There was conflict in the evidence in respect of some of the matters adverted to, but there being evidence tending to sustain the plaintiff's case, the instruction was properly refused.

The fact is therefore to be treated as conclusively settled that the Pennsylvania Company was guilty of negligence causing the death of plaintiff's intestate, and that he was in the exercise of due and proper care. As already said, Exchange avenue is used as the ordinary and usual mode of reaching the main entrance to the Union Stock Yards. This entrance is an arched way, with one large and two small gates, and from thence east, across these tracks, is a planked crossing, "about thirty or forty feet in width, which is used in common by persons on foot and those on horse-back and those in carriages." The deceased was on this walk or crossing, at which a watchman was kept by the stock yards company, but who

failed to give notice of this backing train. It was for the jury to say whether, in view of all the circumstances shown, the deceased exercised ordinary care for his own safety, and having found that he did, and that this appellant was negligent, and that finding of fact having been approved by the Appellate Court, it is not here open for review.

But it is insisted that whatever the liability of the Pennsylvania Company may be, the Stock Yards Company is not liable, and that the court erred in overruling its motions for new trial and in arrest of judgment. It is said there is no charge in the declaration that this appellant or its servants were guilty of negligence, and negligence being the *gist* of this action, no recovery could properly be had without it was alleged and proved. Without pausing to determine whether there are not sufficient allegations of negligence in the declaration to charge the stock yards company, it will be observed that it is alleged that company owned and used the four railroad tracks before mentioned, and that the Pennsylvania Company, "having control and occupation of said railroad tracks, and also of a certain locomotive engine attached to a train of cars," negligently managed and operated the same, whereby the plaintiff's intestate was killed, etc. The charge of negligence against the Pennsylvania Company is confessedly ample.

The law has become settled in this State, by an unbroken line of decisions, that the grant of a franchise, giving the right to build, own and operate a railway, carries with it the duty to so use the property and manage and control the railroad as to do no unnecessary damage to the person or property of others; and where injury results from the negligent or unlawful operation of the railroad, whether by the corporation to which the franchise is granted, or by another corporation, or by individuals whom the owner authorizes or permits to use its tracks, the company owning the railway and franchise will be liable. *Lesher* v. *Wabash Navigation Co.* 14 Ill. 85; *Chicago, St. Paul and Fond du Lac Ry. Co.* v. *McCarthy,*

20 id. 385; *Ohio and Mississippi Ry. Co.* v. *Dunbar,* id. 623; *Illinois Central Railroad Co.* v. *Finnigan,* 21 id. 646; *Illinois Central Railroad Co.* v. *Kanouse,* 39 id. 272; *Toledo, Peoria and Warsaw Ry. Co.* v. *Rumbold,* 40 id. 143; *Peoria and Rock Island Railroad Co.* v. *Lane, Admx.* 83 id. 448; *Pittsburg, Chicago and St. Louis Ry. Co.* v. *Campbell,* 86 id. 443; *Wabash, St. Louis and Pacific Railway Co.* v. *Shacklet,* 105 id. 364; *Balsly* v. *Railroad Co.* 119 id. 68.

While the company guilty of the negligence,—in this case, the Pennsylvania Company,—will be liable for the damages resulting therefrom, the owner of the railroad to whom is granted the control and management of it will also be liable.    The public may look for indemnity for injury resulting from the wrongful or unlawful operation of the road, to that corporation to which they have granted the franchise, and thus delegated a portion of the public service; and for this purpose the company whom it permits to use its tracks, and its servants and employes, will be regarded as the servants and agents of the owner company.    (Authorities *supra; Singleton* v. *Southwestern Railroad Co.* 70 Ga. 464; *Nelson* v. *Vt. & C. R. R. Co.* 26 Vt. 717.)    It follows, therefore, that no other negligence than that of the company or corporation permitted or authorized by the owner company to use its railway, need be alleged or proved to fix the liability of the owner.

. The law is conceded to be as stated as respects railway corporations in this State, but it is said that the rule can have no application to the stock yards company. It is insisted that its tracks are upon its private grounds, and for its own convenience, and that the same rule must be applied to its tracks as would apply to the track of a private individual extending into his lumber yards, or the like.    Without pausing to discuss what would be the liability in the case supposed, it will be found, by reference to the charter of the stock yards company, that its right to own, build, maintain and operate its railway is by virtue of a franchise granted by the State.    By

its charter, (Private Laws, 1865, p. 678,) which, it is declared by the legislature, "shall be deemed a public act," appellant is created a body politic and corporate, by the name and style of "The Union Stock Yards and Transit Company in Chicago," in perpetuity. By the second section it is given power to locate, construct and maintain upon land it may acquire, in convenient proximity to the southern limits of the city of Chicago, all necessary "yards, enclosures, buildings, structures and railway lines, tracks, switches and turn-outs," etc. By the third section it is authorized to construct a railway, with one or more tracks from its yards, so as to connect, outside of the city of Chicago, its yards with the tracks of all railroad lines entering Chicago from the south and west, within prescribed limits. For this purpose it may acquire land for right of way by purchase and condemnation (sec. 4) under the general laws of the State. It is granted power to make connections with all of said railroads, with suitable side-tracks, switches and connections, so as to enable "all trains running upon said railroads" so entering said city, to easily and conveniently approach its yards, and to change, alter and re-locate its tracks, and to "fully finish and maintain said railroad or roads," and to transport, and allow to be transported thereon, by steam or other power, freight and property of every kind, and to fix, establish, take and receive such rates of toll for all freight transported over its lines, as its directors may, from time to time, establish; provided "all fees and charges for freight * * * shall be subject to any general law * * * in reference * * * to railroads." It may construct and maintain its lines of railway across public streets, highways and water-courses. The eleventh section is a limitation upon its power to maintain or operate a railroad for the conveyance of passengers or freight "in the city of Chicago." It is apparent this appellant, under its franchise, built, owned and operated its railway, clothed with ample power to control its management and operation, whether by itself or other corporations,

and every reason of public policy applicable to other railroad corporations, applies with equal, if not greater, force to this appellant. It may allow other corporations to use its railway, but it has exclusive control of the manner of its operation, and must be held responsible for its proper management. It may not absolve itself from responsibility to perform its duty by permitting others to discharge its corporate functions.

But it is said that the motion in arrest of judgment should have been sustained, because it is not alleged, in either count of the declaration, that the train of the Pennsylvania Company in question was running upon the stock yards company's tracks by contract with the latter company, and that, for aught that is alleged, the former company may have been a mere trespasser in so running its train. The allegation is, that this appellant was a corporation organized and acting under the laws of this State, "owning and using railroad tracks, upon which the defendant, the Pennsylvania Company, and other railroads, ran their cars and locomotives," etc. And again, it is averred that the Pennsylvania Company had control and occupation of said tracks. Before verdict the intendments are against the pleader, and upon demurrer to a declaration nothing will suffice by way of inference or implication, but after verdict the rule, with certain limitations, is entirely different. The rule in respect of the latter case is stated in Tidd's Practice (919) to be: "At common law, when anything is omitted in the declaration, though it may be matter of substance, if it be such that, without proving it at the trial, the plaintiff could not have had verdict, and there be a verdict for plaintiff, such omission shall not arrest the judgment." Mr. Chitty (vol. 1, p. 673,) states the rule as follows: "The second mode by which defects in pleading may be, in some cases, aided, is by intendment after verdict. The doctrine upon this subject is founded on the common law, and is independent of any statutory enactments. The general principle upon which it depends appears to be, that where there is any defect, imperfection or

omission in any pleading, whether in substance or form, which would have been a fatal objection upon demurrer, yet if the issue joined be such as necessarily required, on the trial, proof of the facts so defectively or imperfectly stated or omitted, and without which it is not to be presumed that either the judge would direct the jury to give, or the jury would have given, the verdict, such defect, imperfection or omission is cured by the verdict." In Stephens on Pleading it is said, (*148,) quoting the Court of King's Bench in *Jackson* v. *Pesked,* 1 M. & S. 234: "Where a matter is so essentially necessary to be proved that had it not been given in evidence the jury could not have given such a verdict, then the want of stating that matter in express terms in the declaration, provided it contains terms sufficiently general to comprehend it in fair and reasonable intendment, will be cured by verdict." If the plaintiff omits to state a good title or cause of action, or to state facts from which a good cause of action may be implied, there is no room for indulging in intendments; but on motion in arrest of judgment, the court will intend that every material fact alleged in the declaration, or fairly and reasonably inferable from what is alleged, was proved at the trial; and if, from the issue, the fact omitted, and fairly inferable from the facts stated in the declaration, may fairly be presumed to have been proved, the judgment will not be arrested. Authorities *supra; Addington* v. *Allen,* 11 Wend. 375; *Stanley* v. *Whipple,* 2 McLean, 35; *Dobson* v. *Campbell,* 1 Sumn. 319.

It is clear, that whether the Pennsylvania Company was running its train over this appellant's railway under contract with it, or by its permission and consent, was a matter material to be proved, to fix its liability. As before stated, it is alleged that this appellant was a corporation owning and using certain railroad tracks, upon which the other defendant and other railroads ran their cars and locomotives, and that said Pennsylvania Company had control and occupation of said

tracks. The allegation in this respect is not confined to the particular train from which the injury resulted, but the allegation is general that this and other railroad companies "ran their cars and locomotives" over these railway tracks owned and used by this appellant. It seems to us that these allegations are "sufficiently general to comprehend" therein, by fair and reasonable intendment, that the Pennsylvania Company was so in control lawfully,—that is, by consent of the owner corporation. It may fairly and reasonably be implied, that by some contract or arrangement between the two companies the other defendant had the right to run its cars and locomotives over these tracks. No other reasonable inference could arise; and in our judgment there is sufficient appearing, by fair and reasonable implication from what is alleged, to render the declaration good after verdict. As before said, this matter was directly in issue, and was so far material that no verdict against this appellant could lawfully have been rendered without proof of the fact, and looking into the bill of exceptions we find, while there was no express proof of a contract, there is ample evidence from which the jury would be justified in finding that the Pennsylvania Company was running its trains, as it had been for eighteen months prior to the injury complained of, by and with the consent of the owner corporation.

The motions for new trial and in arrest of judgment were properly overruled, and the judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*