# Chicago & W. I. R. R. Co. v. Zoie Doan.

| 93 | 247 |
|----|-----|
| a195s | 168 |

| 93 | 247 |
|-----|------|
| 106 | ¹311 |
| 107 | ⁵ 51 |

1. TORT FEASORS—*Joint and Several Liability.*—It is well settled that any one or more of a number of joint tort feasors, though all are sued, may be found guilty, and it does not follow that because one is found not guilty that such finding conclusively establishes the innocence of another.

2. RAILROADS—*Liability for the Negligence of Lessees of Their Tracks.*—Where a railroad company leases its tracks to another company, it is, as such lessor, liable for the negligence of the lessee company, while it is using its tracks, to the same extent as such lessee company is itself liable.

3. SAME—*Establishing Stopping Places by Usage.*—Where a railroad company permits a place to be used as a stopping place and permits passengers to get upon its trains, assists them in so doing and collects fares, a jury will be justified in finding that the company had established the place as a stopping place for the receipt and discharge of passengers, and as such, invited the public to take and leave its trains there.

4. SAME—*Rights of Passengers.*—Persons waiting to take a train at a stopping place for trains have a right to presume that all trains will comply with the law by stopping at adjacent railway crossings, not be running at dangerous rates of speed when passing such places, give warning, and display lights as required by ordinances of cities.

5. INSTRUCTIONS—*Are to be Read as a Series.*—When instructions, taken apart from each other and from other instructions in the case, are not free from error, but when read in connection, as always should be done, do not mislead the jury, the error is not reversible.

6. DAMAGES—*When $8,500 is Not Excessive.*—On November 29, 1895, a young woman seventeen years of age was injured by being struck by the tender of an engine drawing a passenger train. At the time of the injury she was in the enjoyment of very good health, had never suffered from any sickness which left any bad results, and from April, 1895, to the time of her injury, she had worked at clerical work every day except one, including holidays and Sundays. Besides being hurt in her hip and shoulder, her right ankle was sprained and she received injuries in her side and spine which caused her severe pain and confined her to her bed about three months. and rendered her unable to work for something more than a year after her injury. About two years after the injury she again went to work as a typewriter and continued until November, 1899, when she was again compelled to leave her work by reason of her sufferings from spinal and womb troubles, resulting from her injuries. It was held that a verdict for $8,500 was not excessive.

**Trespass on the Case,** for personal injuries. Appeal from the Superior Court of Cook County; the Hon. AXEL CHYTRAUS, Judge, presiding.

Heard in this court at the March term, 1900. Affirmed. Opinion filed February 14, 1901.

**Statement by the Court.**—Appellee, November 29, 1895, then a young woman aged seventeen years, was injured by being struck by the tender of an engine drawing a passenger train of the Chicago & Eastern Illinois Railroad Company upon the railway tracks of appellant company, the former company being a lessee of the latter. She brought suit against the former company for her injuries, and later joined appellant as a defendant. A trial resulted in a verdict in her favor against appellant for $8,500 and finding the other company not guilty, upon which judgment was rendered, from which this appeal is prosecuted.

The declaration, as amended, on which the trial was had, consists of five counts, the first of which is thus stated (and is substantially correct) by appellant's counsel, viz.:

The first count charges that the appellant was the owner of a railroad between Thirty-eighth and Thirty-ninth streets; and the Chicago and Eastern Illinois Railroad Company, impleaded as a defendant, the Louisville, New Albany and Chicago Railroad Company (also known as the Monon Company), the Wabash Railroad Company, and other companies not named, were using and occupying the said tracks as its lessees, and operating their trains of cars on its four tracks at that point. That the Eastern Illinois company, as such lessee, had established a stopping place for its south-bound suburban passenger trains at a point along said tracks about half way between said Thirty-eighth street and said Thirty-ninth street, where the patrons of said defendant desiring to take passage on said south-bound suburban passenger trains could board the same, and was, at the time in question, using said stopping place for the purpose for which it had been established as aforesaid; and it charges that it was the duty of appellant, as the owner of said tracks, and of the Eastern Illinois company, as its lessee, to provide at said point a safe and suitable waiting place for the patrons and passengers of said Eastern Illinois company to stand and remain while awaiting

the arrival of said trains, which would afford a safe and proper means of entering said south-bound suburban passenger trains; but that the defendants wholly neglected so to do. That it was the custom of patrons of said Eastern Illinois company and passengers on said suburban trains, with the knowledge and consent of the defendants, to take passage on said trains at this stopping place, and for the Eastern Illinois company's servants to collect fares from passengers boarding its car at said stopping place, and permit its passengers to get on and off its south-bound suburban passenger trains at that place, the said place then and there being a place of great danger and peril to passengers awaiting the arrival of said trains. That at the time in question, while dark, the plaintiff was standing at said stopping place to take passage on one of the south-bound suburban passenger trains operated by the Eastern Illinois company on track 2, said train being then about due at that place, and that while she was so waiting, the Monon company ran another engine and train on track 1, in a northerly direction, in a careless and negligent manner, and at a high and dangerous rate of speed, viz., at the rate of twenty-five miles per hour, and without ringing a bell or sounding a whistle or giving any alarm or notice of the approach of said train until it was very close to where she was standing, to wit, twenty feet; and it charges that there was no light on the forward end of the locomotive, as is required by an ordinance of the city of Chicago, prescribing that every locomotive engine shall have a brilliant and conspicuous light on it while running at night time on any railroad track within the city of Chicago, which ordinance was set out *verbatim*. It then continues to charge that by reason of the negligence of the Monon company in running its train at this rate of speed without ringing a bell or sounding a whistle, and without a headlight, and by reason of the failure and negligence of the defendants in not providing a safe and suitable place for the patrons and passengers of said suburban trains to stand and remain while awaiting the arrival of said trains at the stopping place aforesaid, the

plaintiff became terrified and confused, and in order to escape the apparent impending danger of injury from the train on track 1, she ran across track 2, and while using reasonable care to get out of the way of the train on track 1, the defendant, the Eastern Illinois company, so carelessly and improperly drove its engine and train then approaching said stopping place from the north, which the plaintiff was waiting to take passage on, that by and through said carelessness and improper conduct of the said defendant, Chicago and Eastern Illinois Railroad Company, the said locomotive engine attached to said train of passenger coaches, then and there struck upon and against the plaintiff, and she was thrown, etc.

The second count does not differ from the first materially, except that it charges the same negligence generally against both defendants, omitting the ordinance and negligent running of the Monon train.

The third count is quite similar to the first, except it alleges that in addition to the Eastern Illinois and Monon companies, the Wabash Railroad Company was a lessee and used appellant's tracks; alleges that appellee was suddenly startled and terrorized by the rapid and unexpected approach of the Monon train, and to escape danger of death or great bodily injury, drew back from track No. 1, on which that train ran, crossed track 2, etc., but it omits the ordinance set out in the first count.

The fourth count is similar to the third, but instead of being startled and terrorized by the Monon train, it alleges, in addition to the negligence of defendants and the Monon company, that she had no knowledge of the approach of the Monon train until it was within twenty feet of where she was standing; that the distance between tracks 1 and 2 was not to exceed eight and one-half feet, and being apprehensive that her clothing might be caught in the draft produced by the rapid motion of the train, she drew back toward and across track 2, and as she did so her progress was checked and blocked by a switch engine of the Wabash company, which was carelessly and recklessly driven along

track 3 directly in front of her as she crossed track 2, and in order to avoid being killed or suffering great bodily injury from the switch engine, she stopped and turned to avoid the same, and while in the exercise of due care, the Eastern Illinois train, which was carelessly, negligently and improperly driven at a high rate of speed from the north on track 2, ran against and upon her with great force, etc.

The fifth count is about the same as the second count, and in addition alleges negligence in the driving and management of the Eastern Illinois train.

The plea by each defendant is the general issue.

Among other instructions given for appellee are the following:

"1.   The court instructs the jury that it is the duty of the jury in order to ascertain whether the defendants, or either of them, by their or its conduct, invited the public to take passage upon the suburban trains of the defendant, Chicago and Eastern Illinois Railroad Company, going southward at a place between Thirty-eighth and Thirty-ninth streets, in the city of Chicago, to consider all the evidence in this case in relation to the manner in which persons getting or attempting to get upon any of such trains at that point were treated by the agents and employes of said defendants, or either of them.

"2.   The jury is instructed that in order to determine whether the plaintiff exercised due care and caution for her own personal safety at the time of her alleged injury, it is their duty to consider all the circumstances at the time and immediately before the plaintiff was struck by the passenger train of the defendant Chicago and Eastern Illinois Railroad Company, if the evidence shows she was so struck.

"5.   The jury is instructed that even if they should believe from the evidence in this case that the object of the defendant, Chicago and Eastern Illinois Railroad Company, in stopping its south-bound surburban trains at a point between Thirty-eighth and Thirty-ninth streets, in Chicago, was to comply with the statutes of this State with reference to stopping trains for railroad crossings, yet, if the jury further believe from the evidence that the defendant, Chicago and Eastern Illinois Railroad Company, had been in the habit for years of permitting passengers to board its said trains at said point and taking fare from them, and otherwise treating them as passengers, this evidence should

be considered, together with all the evidence introduced in the case, in order to determine whether the stopping of said trains was made exclusively for the purpose of complying with the statute above referred to."

W. H. Lyford and S. A. Lynde, attorneys for appellant.

Clark & Clark, attorneys for appellee.

Mr. Justice Windes delivered the opinion of the court.

Appellant's counsel contend :

1st.    That there can be no recovery against appellant for the negligence of the Monon company, for the reason, as they claim, the charges of negligence in the declaration against that company are by way of recital merely. This claim is clearly untenable. The declaration, as will be seen from the statement preceding this opinion, directly and positively alleges negligence of the Monon company in running its trains at a high and dangerous rate of speed, to wit, twenty-five miles per hour, without ringing a bell, sounding a whistle or giving any alarm or notice, and without a light on the forward end of the locomotive, as required by an ordinance of the city of Chicago, which is set out in full in the first count.

2d.    Appellant claims that the verdict of not guilty as to the Eastern Illinois company conclusively establishes that there was no negligence as to that company and therefore relieves appellant from the charge of negligence in failing to provide a safe and suitable waiting place at the point in question. It is well settled that any one or more of a number of joint tort feasors, though all are sued, may be found guilty, and it does not follow that because one is found not guilty that such finding conclusively establishes the innocence of another. The verdict of not guilty may be clearly and manifestly against the evidence, and whether or not a verdict of guilty as to the other should follow, involves an examination of the evidence to determine whether or not it sustains the verdict.

3d.    The further claim is made that as the evidence shows

that all trains were required by law to stop at the place where the accident occurred, and because, as it is claimed, the evidence in the case shows conclusively that the public were not invited by appellant nor the Eastern Illinois company to come to the place in question and make use of the railway tracks there as a waiting place for trains, no negligence is shown. We think this claim, as a whole, is not supported by the evidence. The evidence does show that immediately south of the place of the accident appellant's tracks are crossed on the same level by other railway tracks, and the law of this State requires that all trains at such a place should be brought to a full stop before reaching the crossing, and within 800 feet therefrom; but the evidence does not sustain the remaining portion of the claim; on the contrary, the clear preponderance of the proof is that for a long time prior to the accident, some of the witnesses putting it as long as six years, the Eastern Illinois company had almost daily permitted people (at times as many as ten to fifteen persons, and on the night in question some of the witnesses say there was a crowd of people waiting) to take its suburban trains at the point in question; that its employes made no objection thereto, but even at times assisted persons to board such trains, and invariably collected fares from all who took its trains at this place. It is true it appears that the Eastern Illinois company provided no facilities at this place for the comfort safety or convenience of passengers, did not advertise the point as a stopping place for trains, and sold no tickets to or from this point, but we regard this evidence of little importance in view of the facts, as above stated, being so clearly established.

Appellant is the lessor of the Eastern Illinois company, and as such is liable for the negligence of the latter while using appellant's railway tracks to the same extent as its lessee would be liable. Ry. Co. v. Rumbold, 40 Ill. 143; R. R. Co. v. Ellett, 132 Ill. 654–9, and cases cited.

It is only argued by appellant's counsel in this regard, that the evidence was not sufficient to show negligence; in

fact it is conceded—and they cite 4 Elliott on Railroads, Sec. 1641, and Thompson on Carriers of Passengers, 269, which sustain the proposition—that if a railway company has established a stopping place for the reception and discharge of passengers, and has invited the public to come to that place to take its trains, or to leave trains at this point, the duty of the company is to use reasonable care to provide a safe place for the passengers to take or leave the trains. That the trains of the Eastern Illinois company had for years stopped at this point is abundantly established, and stopped long enough to allow passengers to get on the train is also shown; also that they were required by law to stop for the crossing, but only for a time sufficient for the engineer to ascertain that the way was clear and that the train could safely resume its course. From this evidence and the other evidence as to the custom of permitting passengers to get on, assisting them in doing so, and collecting their fares, the jury was justified in finding that the company had established this point as a place for the receipt and discharge of passengers, and had invited the public to take and leave its trains there.

4th. The claim is made that appellee, knowing the danger of going on the tracks and waiting for the train, voluntarily took all risk of injury, was guilty of contributory negligence, and therefore could not recover. That contributory negligence is generally a question for the jury, is too well established to require the citation of authority.

As we have seen, the public were invited to take Eastern Illinois trains at this point, and that it was a regular stopping place for trains. It appears from evidence uncontradicted, that numerous persons, including appellee's father, had for years before been in the habit daily of taking its trains at this place about the hour of the accident to appellee; that appellee herself had daily taken the same trains at this time for several months before; and it fails to appear that any previous accident had ever happened at this point. Many other persons, both men and women, including appellee's father, were at the time waiting for the same train at

about the same place and upon the railway tracks. Moreover, she had a right to presume that all trains would comply with the law by stopping for the railway crossing, which is immediately to the south, and necessarily would not be running at a dangerous rate of speed when they passed this point, and would give warning of their approach, as well as obey the city ordinance by having a brilliant and conspicuous light on the forward end of the locomotive engines, all of which the evidence tends to show was not the case with the Monon train, which came from the south, and passed her almost at the instant and just before she was struck by the Eastern Illinois train. These matters being taken into consideration, as well as all the other circumstances attending the accident, which are too numerous to set out in detail, we think the matter of appellee's care was one for the jury, and it can not be said that their finding in this regard is manifestly against the evidence.

5th. For appellant it is also argued that appellee's going on the tracks was the proximate cause of the injury, and not the negligence of the Monon company. From what we have said, it follows that appellee was rightfully on the tracks and was in the exercise of ordinary care for her safety. The evidence shows that she, with others, was standing on track No. 1, which was the north-bound passenger track, waiting for the Eastern Illinois suburban train, which was coming from the north on track No. 2, and was only a short distance away, when a sudden outcry was raised that a train was coming from the south, which it appears was the Monon train, and was on track 1; that it was dark, snowing, and the wind blowing; that there was great confusion and hurrying by the crowd of people who were on the tracks in waiting for the Eastern Illinois train; that the Monon train was coming rapidly, and there was no light on the locomotive; that appellee was called to by the witness Glass, who was very near her, to come across track 2, toward the west, which she did, and when almost to track 3, still further west, a switch engine of the Wabash company came backing from the south on track 3, going slowly,

but very near her, and to avoid being run over by the switch engine she turned back toward track 2, and just as she did so, was struck by the tender of the engine of the Eastern Illinois train and injured. This train was coming to a stop. Appellant has four tracks at this point, numbered 1, 2, 3 and 4. No. 1 is on the east, and 2, 3 and 4 are immediately to the west in the order of the numbers. Nos. 1 and 2 are used by passenger trains and 3 and 4 by freight trains. Trains on 1 and 3 go toward the north and on 2 and 4 toward the south. The space between tracks 1 and 2 and between 2 and 3 is about eight feet. The distance between the tracks, from center to center, is about twelve feet and eight inches, thus making the distance between the rails of each track, from center to center, about four feet and eight inches. There are also many other minor circumstances testified to by the witnesses which, considered in connection with those above detailed, we think presented a question of fact for the jury, and it was justified therefrom in finding that the proximate cause of the injury was the negligence of the Monon company. Had the Monon train come at a reasonable rate of speed, or given warning of its approach, or had on its engine a proper headlight, no doubt it would have been discovered by appellee or one or more of the many people in waiting, so that all hurry and confusion would have been avoided and appellee would have stepped to the east from track 1 when she would have been free from danger, instead of doing as she did.

6th. But it is further argued that if appellee's contributory negligence was not the proximate cause of the injury, then it was her fright from the Wabash switch engine, for which, it is said, appellant is not liable. We think that, too, was a question for the jury, in view of the matters last above referred to, and the jury being justified in finding that the negligence of the Monon company was the proximate cause of the injury, it is unnecessary to consider whether appellee's fright from the Wabash engine was also a proximate cause.

7th. Another contention is, that the court erred in giv-

ing the instructions 1, 2 and 5, for appellee, quoted in the statement, because they single out and give undue prominence to particular facts in evidence, to the exclusion of other facts in evidence, bearing on the same points. We will not consider the instructions separately. Taken apart from each other and from the other instructions in the case, they are not free from criticism; but when read in connection with the other instructions in the case, as should always be done, we are of opinion that as a whole they could not have misled the jury. Instructions 1 and 5 for appellee, when read and considered with instructions 6, 11, 12 and 13 for appellant, place before the jury properly the different contentions of the parties, and call the attention of the jury to all the different matters which they should consider. The same is true when appellee's instruction 2 is read and considered with instructions 6, 10, 11 and 12 for appellant.

8th. As to the claim that there was error in refusing certain of defendant's instructions, we think it is not tenable. Instruction 15 refused, is in substance covered by instruction 12 given, and is, moreover, we think, calculated to mislead the jury by the reference to " conditions existing " at the place of the accident. If these words quoted have reference to the running of the Monon train under the circumstances shown, and the backing of the Wabash engine, as we think the jury were liable to suppose, then there was no evidence on which to base that part of the instruction, and if they do not refer to this train and engine, then they were liable to mislead the jury.

The 16th instruction was properly refused, because it ignores the claim that the public was invited to take trains at the place in question, the evidence tending to support such claim, and the resulting duty of defendant to persons taking such trains. The 18th refused instruction is subject to the same criticism as the 16th, and was properly refused.

The 19th and 20th instructions were properly refused because they are in substance covered by the 6th given, and besides are not based on the evidence in the case. The

jury should determine the care or negligence of the plaint-
iff from the evidence alone.    From these instructions the
jury might think they were at liberty to consider other
matters.    The substance of the 21st instruction refused is
covered by the 9th, which was given.

9th.    It is insisted the verdict is excessive, but we can
not agree that such is clearly manifest from the evidence.
To detail the evidence as to injuries of appellee and suffer-
ings resulting therefrom, would unduly extend this opinion.
It appears that at the time of the injury, November 29,
1895, appellee was seventeen years of age, in the enjoyment
of very good health, had never had any sickness which left
any bad results, and from April to November 29th, when
injured, had worked at clerical work nine hours every day
except one, including holidays and Sundays.    As a result
of the accident, besides being hurt in her hip and shoulder,
her right ankle was sprained and she received injuries in
her side and spine which caused her severe pain and confined
her to her bed about three months, and rendered her unable
to work for something more than a year after the injury.
About two years after the injury she again went to work
as a typewriter and continued until in November, 1899,
when she was again compelled to leave her work by reason
of her sufferings from spinal and womb troubles resulting
from her injuries in November, 1895.

The physician and surgeon, Dr. Haskett, who treated
appellee from the time of her injury until late in the fol-
lowing summer or fall, and for three months immediately
preceding the trial, says that when he was first called,
besides describing minor injuries, there was a discoloration
of the abdomen just above the pelvis about the size of an
ordinary almond, pain in the lumbar region, in the small of
the back, and injury to the spine, but her principal suffering
was at the point of discoloration in the abdomen; that the
pain seemed to be intense; that she had what seemed to be
in the nature of spasms.    At the end of his daily visits,
which continued for about two months, he says she was in
a condition of acute or chronic sub-acute myelitis; that she

had indications of womb trouble during the year 1896; that the first time she was able to come to his office, three or four blocks from her home, was in May after the injury; that she was then very weak; that he did not see her from the spring of 1897, until about three months before the trial, when he found her in just about the same condition that she was on the Monday night after her injury on the preceding Friday (November 29, 1895). Two weeks after this visit he made a digital examination and found her womb badly prolapsed and also the dragging down of the ovaries with it, which he describes in detail, and says she was suffering great pain in the back and pain in the left side, and he should judge her worst trouble would be the spinal irritation, being constant, and one from which she will probably always suffer largely. He also says the prolapsus of the womb and ovaries will likewise be permanent, and in substance that these conditions resulted from her injuries in November, 1895; also that his services to her were reasonably worth $300. The evidence of Dr. Haskett is corroborated by plaintiff, her mother and others.

Defendant produced a surgeon of forty years' experience who saw and observed appellee when she gave her deposition a short time before the trial, who testified that she was then extremely nervous and was suffering from hysteria, which was curable; also a physician and surgeon who says he saw and made some examination of appellee in the December and January after the injury. His evidence strongly contradicts Dr. Haskett as to the nature and extent of appellee's injuries; also another physician who saw appellee November 29, 1895, the evening of her injury. His evidence does not seriously conflict with Dr. Haskett's; in fact he says " she was quite seriously shocked," though he also said his idea was no permanent bad results would follow such a shock.

From a careful consideration of all the evidence bearing upon the question of damages, we think we should not disturb the verdict because of its amount.

There being, in our opinion, no reversible error in the record, the judgment is affirmed.