## Chicago & Eastern Illinois R. R. Co. et al. v. Jeremiah Donworth.

1. RAILROADS—*Owner of Franchise is Liable for Negligence of Those Whom It Allows to Use It.*—Where injury results from the negligent or unlawful operation of a railroad, whether by the corporation to whom the franchise is granted or by another corporation, or by individuals whom the owner authorizes or permits to use its tracks, the company owning the railroad and franchise is liable.

Trespass on the Case, for personal injuries. Appeal from the Superior Court of Cook County; the Hon. THEODORE BRENTANO, Judge presiding. Heard in the Branch Appellate Court at the October term, 1901. Opinion filed January 16, 1903. Remittitur filed and cause affirmed January 20, 1903.

W. H. LYFORD and K. M. LANDIS, attorneys for appellants; ALBERT M. CROSS, of counsel.

JOHN C. KING and W. J. KING, attorneys for appellee. ANDREW J. HIRSCHL, of counsel.

MR. JUSTICE FREEMAN delivered the opinion of the court. This is an action on the case for personal injury, which

resulted in a judgment of $5,000 in appellee's favor against appellants, who prosecute the appeal.

The accident happened at a point where Twenty-sixth street in Chicago (running east and west) crosses eight railroad tracks, running north and south. The easterly four of these tracks are called in evidence the "Fort Wayne" tracks. The westerly four are called the "Western Indiana" tracks. It is undisputed that plaintiff was struck by a south-bound passenger train of the Chicago and Eastern Illinois Railroad Company, appellant, on the third track from the west of the Western Indiana tracks, as he was crossing the tracks on foot. The two sets of tracks were separated by a clear space of about fifteen feet; and in this space, north of the crossing, was the tower-house, occupied by the operator of the crossing gates, and in the same space was the flagman's shanty, south of the crossing. East and west of the entire system of tracks were crossing gates, operated by compressed air from the tower-house. The distance between these gates is variously estimated from ninety to one hundred and twenty feet.

Appellee's theory of the case is that he walked onto the crossing from the west, going east; that he looked and saw nothing till too late; that no bell or whistle sounded on the train, and that the speed of the train was about twenty-five miles per hour. On the other hand, the theory of appellants is, that appellee walked onto the tracks from the east going west; that he did not look, but recklessly stepped in front of this train, which he could not have failed to have seen (in broad day-light) had he looked; that both the engine bell and the tower-bell were ringing, and that the speed of the train was not to exceed twelve miles per hour.

It is first urged that the trial court erred in entering judgment against both defendants, when, as it is said, there is no evidence tending to show liability of more than one. Although it is conceded that the train by which appellee was injured belonged to the Chicago and Eastern Illinois Railroad Company and the tracks upon which it was run-

ning at the time belonged to the other defendant, it is said there is no evidence that the former company was using the track under agreement with or without the knowledge and consent of its owner. It is not claimed that, in fact, such use of the track was without express knowledge and consent of the owner, and there is, we think, evidence warranting the conclusion that express authority existed. It appears from the evidence to have been recognized as proper and not unusual by employes of the owner of the track, and it was certainly permitted, and without objection, so far as appears, in this instance. We are of opinion that in the absence of any evidence whatever tending to show that such use of the track was without consent of the owner, the fact that such use was permitted without objection, so far as appears, by one railroad company of another's tracks, is sufficient to charge the owner of the tracks with liability for negligent conduct of the user. It is not to be presumed that employes of one railroad company would permit the trains of another company to run on the former's tracks at random without authority. Such use would upset schedules, disarrange traffic, and interfere with the use of the tracks by the owner to such an extent as to interrupt and put a stop to its business. It would not be tolerated. "Where injury results from the negligent or unlawful operation of the railroad, whether by the corporation to which the franchise is granted or by another corporation, or by individuals whom the owner authorizes or permits to use its tracks, the company owning the railway and franchise will be liable." Penn. Co. et al. v. Ellett, 132 Ill. 654–659–660, and cases there cited; C. & E. R. R. Co. v. Meech, 163 Ill. 305–308.

It is urged that the verdict is against the weight of the evidence. There is a radical conflict in the testimony as to material facts. Appellants' witnesses state that the gates were lowered, that the engine bell was ringing and that appellee approached from the east going westward. The engineer of the train was on the right or west side of his engine. He states that he did not see appellee until just as he was struck, and if appellee was in fact approaching from

the east, as appellant contends, the failure of the engineer to see him would be explained, because the boiler and smoke-stack of the engine would shut off his view of objects near the track on the left or east side of the engine when close at hand.   If appellee was crossing from the east and going westward he had a full and unobstructed view of the tracks to the north, and ought to have readily seen the train approaching from that direction, the whole time it took him to go from the crossing gates on the east across four tracks of the Fort Wayne road, over the fifteen intervening feet to be traversed to reach the first of the Western Indiana tracks, and then over that track before coming to the place on the second from the east of the Western Indiana tracks, where he was struck.   It is said that he could scarcely claim to have been exercising ordinary care if he permitted himself, about eight o'clock in the morning, in broad daylight of a clear day, to step in front of a train, of the approach of which he had such ample opportunity to take notice.   Two witnesses, one of them appellee's brother-in-law, testify, in support of his statement, that he was going toward the east, while he was contradicted in this respect by four witnesses for appellant.   These are the engineer of the train, the flag-man on duty at the crossing, the tower-man and the block-signal operator; and there is also evidence tending to show that the two witnesses for appellee referred to were not where they say they were at the time of the accident.   The train which struck appellee was coming from the north.   If, therefore, appellee was coming from the west and going eastward, it would appear that he should have been struck on his left side; whereas the testimony of his physician, who treated him for some months after the accident, shows that appellee's bruises were all located on his right side. This is not disputed and indicates that he must have been struck on that side, which, to say the least, would not be probable, if in fact he was going, as he says he was, in such a direction as to present his left side to the engine which hit him, and jumped, as he says he did, "right ahead to get away from it."   He was struck with force sufficient, it is said, to throw him twenty-five or thirty feet, and a blow of

such force from an engine could not fail to so bruise him as to leave marks. These were all found upon his right side.

Appellee's statement is that he was walking eastward on the south side of the street which crosses the tracks at that point and was approaching the tracks from the west. He states that the crossing 'gates were not down; that while going eastward he looked north just before he reached the first rail; that there a building on the north side of the street obstructed his view of the tracks to the north; that he then crossed the first track and looked south, and when he reached the middle of the third track he looked north, "and when I looked north this train was hardly as far away from me as that table is now, which distance I think was six feet, but which you think ten or twelve; that was the first I knew of the train, and when I saw it I jumped right ahead to get away from it. I believe I was thrown backward but I can not remember any more; I don't know whether I was thrown forward or backward; the last I knew I jumped forward." He says "there was no bell on that train; I did not hear any; I noticed how fast the train was going by the way it came on me. I am told it must be going twenty-five or thirty miles an hour; that is all I know about it." It appears from this testimony, assuming that appellee was going eastward, as he says he was, that after leaving the gate he crossed two tracks and the intervening spaces between them and had reached a third track without looking north, most of this time having an unobstructed view of the approaching train, which he neither saw nor heard. There is testimony for appellant that appellee was looking down as he walked, and it is apparent that he must have been absorbed in what he was thinking of.

While we are not satisfied with the conclusion of the jury upon the evidence in this case, which it is not necessary to further review in detail, yet it is undeniable that there is evidence which may justify their finding on some of the questions of fact. The evidence to the contrary is not so decidedly preponderating as to make it necessary for us to set aside the judgment upon that ground.

It is urged that the damages are excessive.   There is evidence tending to show that appellee was about fifty years of age when injured.   He had been engaged in loading lumber from vessels, and had for a time been a teamster driving wagons with coal and iron.   Since the accident he has been a private night watchman for about two and one-half years, employed to watch forty-two houses on Drexel Boulevard, involving much walking by night, and has no apparent difficulty in doing the work required.   The permanent result of his injury seems to be that it has left the ligaments of the knee joint of his right leg weaker and the leg less steady than before.   He was confined to his bed for about two months, and was not able to work for more than a year.   He has occasionally a slight stricture of the urethra which first appeared a month or so after the injury, and has required opening up by the simple introduction of a sound two or three times a year.   Appellee says he can not hear anything with his left ear, and one of his medical witnesses positively testified, over objection, that appellee had lost his hearing; but the same witness on cross-examination stated, "As to that all I know is what he told me."   We think appellant's motion to strike out the direct testimony of the witness on that point was erroneously overruled.   There is no evidence, so far as we are advised, that the alleged condition of his hearing is a result of the injury, though if in fact there is any such difficulty in his hearing on that side it might, perhaps, have been so caused.   We are of opinion that the verdict is larger than is proper under the evidence as it now stands.

Complaint is made of error in refusing and modifying instructions.   While we think it would have been proper to give some of the refused instructions requested by appellant, yet in view of the evidence we do not find that reversible error was committed in this respect.   If, therefore, appellee shall within ten days from the filing of this opinion remit $2,000 from the judgment, it will be affirmed for the remainder.   Otherwise the judgment will be reversed and the cause remanded.