## Alton Light & Traction Company v. Frank Oller, by next friend.

1. PASSENGER—*duty of carrier towards.* A common carrier of passengers is held by law to the use of the highest degree of care consistent with the practical operation of its road. It is bound to do all that human care, vigilance and foresight can reasonably do, consistent with the mode of conveyance, and the practical operation of its road in the exercise of its business as a carrier.

2. NEGLIGENCE—*when carrier has burden to overcome charge of.* Where a passenger, while exercising ordinary care for his own safety, is injured by the operation of defendant's road, the burden

is on the defendant to show that the injury was not due to its own negligence.

3. NEGLIGENCE—*how question as to whether overcrowding cars is, determined.* Whether it is negligence for a common carrier of passengers to permit its cars to be overcrowded, is, ordinarily, a question for the jury to determine under all the facts and circumstances of the case.

4. DECLARATION—*how construed.* A declaration is construed most strongly against the pleader when tested by demurrer.

5. RIGHT OF RECOVERY—*instruction as to, where action was between passenger and carrier, approved.* An instruction upon this subject as follows: "The court instructs the jury that if you believe from the preponderance of the evidence in this case, that the plaintiff, * * * became a passenger on one of defendant's cars, and that while he was a passenger on such car, he, while exercising due care for his own safety, was injured by the negligence of the defendant, as charged in plaintiff's declaration, or some count thereof, then in law, the defendant is liable for such injury, and the jury should so find by their verdict,—" approved.

6. INSTRUCTION—*must not ignore any theory of recovery.* An instruction concluding with a direction to find for the defendant, must not ignore any theory upon which the plaintiff might be entitled to recover.

7. EXCESSIVE SPEED—*when evidence tends to prove.* Held, from the evidence in this case, that it tended to establish the running of the car at an excessive rate of speed.

Action on the case for personal injuries. Appeal from the Circuit Court of Madison county; the Hon. CHARLES T. MOORE, Judge, presiding. Heard in this court at the August term, 1904. Affirmed. Opinion filed March 17, 1905.

LEVI DAVIS and HENRY S. BAKER, for appellant.

D. E. KEEFE, for appellee.

MR. JUSTICE CREIGHTON delivered the opinion of the court.

This was an action in case, in the Circuit Court of Madi-

Alton Light & Traction Co. v. Oller.

son county, by appellee against appellant, to recover for a personal injury sustained by appellee while a passenger upon one of appellant's cars. Trial by jury. Verdict and judgment in favor of appellee for $6,500.

The declaration consists of two counts. Omitting the caption inducement and conclusion they are as abstracted:

*First count.* "And the plaintiff avers that on the 7th day of September, 1903, he became a passenger upon one of defendant's cars in the said city of Alton, to be carried from Rock Springs Park to Union street in the said city of Alton for a certain reward to the defendant, and that thereupon it became and was the duty of the defendant to safely carry the plaintiff to the place of his destination along the line of said street railway. Yet the defendant did not regard its duty in this behalf, but negligently permitted more persons to become passengers on said car, after the plaintiff had become a passenger, than said car would accommodate and by reason of such a large number of persons being by said defendant so negligently permitted to ride upon said car a great crowd of persons was collected on said car so that the same was greatly overcrowded, and the plaintiff thereby forced to ride upon the platform and steps of said car, and while the plaintiff was in the exercise of ordinary care for his own safety in so riding on such platform and steps of said car, the crowd of persons so negligently permitted by the defendant to take passage upon said car and who were then and there compelled to ride upon the platform and steps of said car, were by the motion of said car thrown and forced over and against the plaintiff whereby the plaintiff was forced off and pushed from the platform and steps of said car where he was compelled to ride by reason of such overcrowded condition of such car and whereby the wheels of said car caught and passed over the left foot and leg of the plaintiff and the same was thereby crushed, broken and lacerated so that the same had to be and was amputated."

*Second count.* "And plaintiff avers that on the date afore-

said he became a passenger upon one of defendant's cars to be carried from Rock Springs Park to Union street in the said city of Alton for certain reward paid to the defendant therefor and thereupon it became and was the duty of the defendant to run its car at such a rate of speed as would be least dangerous to the passengers on said car commensurate with the practical operation of said car; yet the defendant did not regard its duty in that behalf but after the plaintiff had taken passage on said car, other persons continued to come upon said car with the permission of the defendant in such numbers that said car would not accommodate them and its seating capacity was greatly overcrowded by reason of such number having taken passage on said car and the plaintiff thereby was forced with other persons to ride upon the steps and platform of said car, which defendant's servants in charge of said car then well knew; yet the servants of defendant so in charge of said car not regarding their duty, negligently ran the said car at a highly dangerous rate of speed while plaintiff and other passengers were so riding on the platform of said car, and such other passengers were surged and tossed over and against plaintiff by reason of the excessive speed of said car, whereby, while the plaintiff was using ordinary care for his own safety, he was crowded and pushed off the platform and steps of said car, and in being so crowded off, one of his feet and limbs were thereby made to fall under the wheels of said car and his left foot and ankle were thereby broken, crushed and lacerated so that it had to be amputated."

While a large number of errors were assigned upon the record, the only ones brought forward and relied upon in the argument are: *The verdict is against the evidence; the court erred in giving instructions 3a and 4, on behalf of appellee, and in refusing to give instructions 8, 11, 14, 15 and 16, asked on behalf of appellant,* and our duty may be limited to these. "One assigning error must bring to the attention of the court what the error is of which he complains, and if but a portion of the errors assigned is insisted upon in the argument the others will be deemed waived."

Keyes v. Kimmel, 186 Ill. 109; Illinois Cyclopedic Digest, Vol. 1, page 411, col. 2.

As to the evidence: Appellee testified in substance as follows: "I live in Alton, am 16 years of age and have lived in Alton going on 6 years. I was working for Kirsch Co., learning the butcher trade, had been with them nearly two years. On the evening of September 7, 1903, I was at Rock Spring Park. I walked out to the park and returned on street car about half past nine. I got on the car right at the park. The car was not crowded when I got on; there was standing room, but the seats were full. I went inside. The car remained for about five minutes and the crowd kept coming on. As the crowd kept coming on I was pushed up to the front end, and the conductor kept hollering, 'Crowd on, this is the last car for the city.' I was on the right side of the car, standing on the outside step, holding to the handles, the one at the forward end, and I stood facing inwardly.

"After the car started I continued to stand at the front end. I paid my fare to the conductor. There was one motorman and one conductor. The car was crowded when it left the park, and the front end was full, and there was no room on the inside to sit down, or on the platform. They ran slow for about half a mile; then they ran faster. I stayed on the front till I got to Liberty street. When the car got to Liberty street and had turned the corner, they turned on the electricity to make the grade and the conductor came to the front and hollered 'transfers.' I called for a transfer, and as I reached for a transfer, the car gave a lurch and I fell off. My home is on Gold, near Union street, and in order to reach home I had to transfer to the Union street line. If I remained on that car it would not take me straight home. I reached to the conductor with my left hand for the transfer and the car lurched and I fell off. I was holding on to the handles with both hands and I reached my left hand for the transfer and before I got hold of it the crowd knocked me off. My back was towards the outside, and I was holding on with my right hand.

"After I was thrown off I got my foot off—I got my foot off the rail as quick as I could. The car went on. The front truck passed over my foot. One wheel passed over my foot. I was picked up and taken down town. The foot was amputated I guess about nine inches below the knee. I have a good education and had good health and was earning a dollar a day at the time I was hurt.

"There were three cars waiting at the park when I got on. I got on at the back end. The car faced south and when I fell off I was on the left hand side of the car, with my back to the street. I don't remember whether there was any one on the lower step with me. I do not remember that there were two boys sitting there by me. The conductor was on the front platform near the door and I reached to him with my left hand. The car had been going fast for about two blocks when I fell off, and we were going up grade. Before we got to the grade, the ground was level and we had been running slow. They turned the corner slow."

Appellee was corroborated in a number of respects by other witnesses. One says: I saw plaintiff getting on the car. When he got on, "the seats were full and there was no room in the aisle. I saw plaintiff going down the aisle." "I saw plaintiff and others going down the aisle to the front end of the car. He got on the back end." Another witness says: "There were seven persons on the front platform besides the motorman. There might have been others, but I did not notice them." And another one says: "It was running at a pretty rapid speed." "From where they picked plaintiff up and put him on the other car to where our car came to a standstill, I guess it was almost a block." And one, speaking of the immediate time of the injury, says: The car swayed, "the sway gave the car a kind of a lurch." "All the people kinder bumped about." A witness who was inside the car and did not notice what happened at the immediate time of the injury says: "Some one hollered that this was the last car, but I can't say whether it was the conductor or motorman."

We are of opinion that the evidence meets all the require-

ments of both counts of the declaration. It is true there is conflict and contrariety of evidence, as there usually is in cases of this character, and counsel insist that it preponderated in favor of appellant and that the verdict is manifestly against the weight of the evidence, and for that reason the trial court should have granted a new trial, and in as much as their motion for new trial was denied by the trial court we should at least reverse and remand. They cite in support of their contention on this point, St. Louis National Stock Yards v. Godfrey, 101 Ill. App. 40. In that case we said: "Although there may be evidence tending to prove all that is required to warrant a recovery, still where the verdict is so manifestly against the weight of the evidence as to make it appear to the court that the verdict was not the result of the impartial and honest judgment of the jury, but that it must have resulted from mistake, or from partiality, prejudice, passion, or some improper motive or condition, it is the duty of the court to set aside the verdict and award a new trial." This we understand to be the true rule, but in our opinion the state of the evidence in the case at bar does not warrant us in classing it under this rule.

This case grows out of the relation of common carrier and passenger. Appellee was a passenger. The law in such case is: "A railroad company as a common carrier of passengers is held by law to the use of the highest degree of care consistent with the practical operation of its road. It is bound to do all that human care, vigilance and foresight can reasonably do, consistent with the mode of conveyance, and the practical operation of its road in the exercise of its business as a carrier." North Chicago Street R. R. Co. v. Polkey, 203 Ill. 225. In the same case it is said: "It would seem to follow that it is not negligence *per se,* under all circumstances, for a carrier to allow a passenger to stand in such a place (upon a foot board). Whether it is negligence on the part of either in a particular case is a question of fact, but if no seat is furnished and the carrier permits a passenger to ride in that way, the carrier assumes the duty of exercising the care demanded by the circumstances." And in

the same case and connection the court says: "In this case it was not inconsistent with the mode of conveyance to oper-ate the car at such a slow rate of speed as to prevent the occurrence of any accident."

Where a passenger, while exercising ordinary care for his own safety, is injured by the operation of defendant's road, the burden is on the defendant to show that the injury was not due to its negligence. The Illinois authorities on this subject are too numerous to cite. See Illinois Cyclopedic Digest, Vol. 2, page 230. It is true as contended by counsel for appellant that a common carrier is not an absolute in-surer of the safety of a passenger, but this class of cases is so far removed from ordinary cases of negligence, that mere proof of the relation of carrier and passenger, and proof of due care on the part of the passenger, and of injury to him, where *vis major* is not apparent, makes a *prima facie* case against the carrier, and this is true, even where specific neg-ligence is charged. Cramblet v. Chicago & N. W. R. R. Co., 82 Ill. App. 542 (550).

While it is not negligence *per se,* for a common carrier of passengers to allow its car to be "greatly overcrowded"— that is, the court cannot say, as matter of law, that it is in all cases negligence, nor can the court say in all cases, as matter of law, that it is not negligence, it is ordinarily for the jury to determine from all the facts proven in a case whether or not such conduct constitutes negligence in that particular case.

In this case it is charged in effect, in each count of the declaration, that appellant suffered its cars to be "greatly overcrowded," that in allowing its cars to become so over-crowded appellant was guilty of negligence, whereby appellee without fault or negligence on his part was injured. Each of these averments raised a question of fact which, in a jury trial, under the law of this state, could only be determined by the jury.

Counsel in connection with, and as a part of their argu-ment in support of their contention that *the verdict is against the evidence,* say: "As the settled rule of pleading is, that

the allegation must be taken most strongly against the plead-er * * * the conclusion must be that the motion of the car (the 'lurch') was not the result of negligence on the part of appellant. * * * Such being the case, the first count furnishes no basis for recovery."

In this conclusion we cannot agree with counsel. In the first place we think the first count, if tested by demurrer, might properly be held to state a good cause of action, and the evidence tends to prove it. But counsel are in error in their statement that the allegation must always be taken most strongly against the pleader. It is only where a plead-ing is challenged by demurrer, or where the trial court is called upon to scan it during the progress of the trial, in re-sponse to a specific objection, specific motion or other specific challenge, that it should be taken most strongly against the pleader. Where a pleading is first challenged or attacked, and "a defect is sought to be availed of on error," or in fact at any time after verdict rendered, then the rule is just the reverse, and all parts of the pleading must be taken most strongly in favor of the pleader—all intendments and rea-sonable inferences stand to the advantage of the pleader, when the record has reached this stage without prior proper challenge. Gerke v. Fancher, 158 Ill. 375; Western Stone Co. v. Whalen, 151 Ill. 472; Shreffler v. Nadelhoffer, 133 Ill. 536; Pennsylvania Co. v. Ellett, 132 Ill. 654. We do not understand that counsel directly contend that there is any variance between the declaration and proofs. The state of the record furnishes no basis for such contention here. The rule is: "All questions of variance between the plead-ings and the proofs must be raised in the trial court so that the objection may be obviated by amendment. Such ques-tions cannot be raised for the first time in the appellate court."

Counsel complain of the action of the trial court in the giving of two instructions on behalf of appellee. These are designated as instructions numbered "3a" and "4"; and are as follows:

"3a. The court instructs the jury that the acts of negli-

gence charged against the defendant, in plaintiff's declaration, are, negligence in permitting its cars on which plaintiff rode to be overcrowded, and negligence in running its car on which the plaintiff rode at an excessive rate of speed."

"4. The court instructs the jury that if you believe from the preponderance of the evidence in this case, that the plaintiff, Frank Oller, on the 7th day of September, 1903, became a passenger on one of defendant's cars, and that while he was a passenger on such car he, while exercising due care for his own safety, was injured by the negligence of the defendant, as charged in plaintiff's declaration, or some count thereof, then in law, the defendant is liable for such injury, and the jury should so find by their verdict."

It is conceded by counsel that the 4th instruction standing alone would be unobjectionable, but they say when read in connection with "3a," it is misleading. They say "3a" is applicable to the second count of the declaration only, and that the jury may have understood that it applied to both counts. Assuming that to be true, appellant could not be damnified thereby, for it does not in the least minify the burden imposed by law upon appellee. It does not authorize appellee to recover on the first count upon any less proof or other proof than the law requires, or than it would have required if this instruction had not been given, but if understood, as suggested by counsel, it required, to warrant a recovery on the first count, proof of all that the law demands for that count and more. We are of opinion, neither when read singly, nor when read together, could either one or both these instructions have possibly misled the jury to the hurt of appellant. In this connection it must be noted that appellant supplemented these two instructions with its 3rd, as follows:

"3rd. You are instructed that you cannot, without violating your oath as jurors, find a verdict for the plaintiff unless you find under your oath as jurors, that he has proved his case by a preponderance (the greater weight) of all the evidence. And if you find the evidence is evenly balanced

or preponderates in favor of the defendant, you must find the defendant not guilty."

This instruction given by the court at the instance and request of appellant, clearly authorizes the jury to find for appellee, upon proof of his case as laid in either count of his declaration.

In the refusal of the trial court to give the 8th, 11th, 14th, 15th and 16th instructions asked on behalf of appellant, we find no material error. The 8th calls for a general verdict in favor of appellant, upon a state of case which does not include the charge of excessive speed, set up in the second count. There was evidence tending to prove the second count and the law is, that a plaintiff is entitled to recover upon proof of one good count, and it would have been reversible error to have given an instruction calling for a general verdict in favor of appellant, upon a state of facts which did not include this count. This instruction is not like "3a" given on behalf of appellee, in this, that "3a" required of appellee in whose behalf it was given all that the law required as to the second count, and all and more than it required as to the first, while appellant's 8th if given would have relieved it from all liability for its negligence in running at a dangerous speed as charged in the second count, and which the evidence tended to prove.

It is, however, insisted in this connection, that the evidence does not tend to prove that the car was run at a dangerous rate of speed. That the statement that "they ran slow for about a half mile, and then ran faster," and that "it was running at a pretty rapid speed," does not tend to prove a "dangerous rate of speed." But the evidence also shows that while it was running at a pretty rapid rate of speed the car "lurched" and all the people "bumped about," and it was at this identical instant that appellee was jostled or crowded off and the injury occurred. This is ample, under the law applicable to common carriers of passengers, to call for satisfactory explanation from appellant. If a dangerous rate of speed did not cause the "lurching" of the car and the injury, what did? The state of facts warranted such infer-

ences as placed the burden at that point upon appellant. As Mr. Justice Cartwright said in North Chicago Street R. R. Co. v. Polkey, 203 Ill. 225 (233): "In this case it was not inconsistent with the mode of conveyance to operate the car at such a slow rate of speed as to prevent the occurrence of any accident," and being overloaded as they were, "to the very water's edge," or to a degree equally as dangerous, they ought to have done so.

We are of opinion the trial court did not err in refusing the 8th, 11th, 14th, 15th and 16th instructions, asked by appellant. This opinion has already necessarily been extended to such length that we do not deem it necessary to analyze and discuss each of these instructions in detail. According to our view of the case as above expressed, they each and all contained patent errors or defects warranting their refusal.

We find no reversible error in this record. The judgment of the Circuit Court is affirmed.

*Affirmed.*