(109 App. Div. 334.)

### KIRBY v. LACKAWANNA STEEL CO.

(Supreme Court, Appellate Division, Fourth Department. November 15, 1905.)

1. MASTER AND SERVANT—EXISTENCE OF RELATION—EVIDENCE.

 The owner of a manufacturing plant agreed with defendant to run it entirely for the manufacture of defendant's work for a specified time, to keep it in repair, to pay all expenses, to do the work as directed by defendant, and defendant agreed to repay to the owner all expenses for supplies, wages, repairs, and insurance; but it was not agreed that defendant should hire, pay, or discharge employés. It was provided that the owner should follow defendant's directions as to the number of men employed, what work they should do, and the rate of wages to be paid. *Held*, that the relation of master and servant did not exist between the owner and defendant, but the owner was an independent contractor.

2. PRINCIPAL AND AGENT—RELATION.

 Such contract did not create the relation of principal and agent between the parties.

 McLennan, P. J., and Spring, J., dissenting.

Appeal from Trial Term, Erie County.

Action by Daniel Kirby against the Lackawanna Steel Company. From a judgment in favor of plaintiff, defendant appeals. Reversed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, and HISCOCK, JJ.

Clarence M. Bushnell, for appellant.

Bartlett & Baker, for respondent.

WILLIAMS, J. The judgment and order should be reversed upon questions of law only, and a new trial directed, with costs to appellant to abide event.

The action is for damages for personal injuries, alleged as a result of the defendant's negligence. There seems to be no controversy as to the accident and injuries, and the verdict should not be disturbed, if the defendant is the party liable to the plaintiff at all. The claim is that the Lake Erie Engineering Works alone is liable, and this is the only question involved on this appeal. The business in which the plaintiff was engaged at the time of the accident was being carried on under a written agreement between the defendant and the engineering works, and the question is which of these two corporations was plaintiff's employer. At the close of the evidence, the trial court held, as matter of law, that under the contract the relation of master and servant existed between the two corporations; the defendant being the master and the engineering company the servant, and that the plaintiff was the servant of the defendant.

We think the court was wrong in that conclusion. The question rests, under the decision, solely upon a construction of the contract. It cannot be aided in any way by parol evidence as to the manner in which the business was carried on under the contract. The contract shows that the engineering company was the owner of the plant, the real estate, and the machinery and tools with which the same was then equipped, and that same should be operated by that company for the following two years exclusively for the making of machinery for the defendant, and it was agreed in brief that:

"(1) The engineering company shall make such machinery and to such stage of completion as should be ordered by the defendant in writing, signed or countersigned by its inspector, and should employ enough men to do the work with reasonable promptness and dispatch. (2) The defendant should furnish all materials and supplies necessary for the operation of the plant and doing the work, on the requisition of the superintendent of the engineering company, approved by the inspector of the defendant. (3) The number of men employed by the engineering company and their wages and competency should be subject to the approval of the defendant, and its inspector should have the power to direct the increase, decrease, or change of the force, and prescribe the scale of wages, and his direction in such matters should be carried out by the engineering company. The defendant's inspector should control the order of the work, the speed of tools, the distribution of men on the work, the methods of handling the men and material, and the system of keeping the time of all employés, and his orders should be given to the superintendent of the engineering company. (4) The defendant should pay the engineering company the payrolls for the wages of all employés and salaries of the office force, except that of the superintendent; the payrolls to be certified as correct by the accountant of defendant at the engineering company's plant, and should be paid within five days of its presentation, so certified to the defendant. The timekeeper should be employed only with the approval of the defendant's inspector, and should be discharged on such inspector's request. (5) The defendant should pay the engineering company 6 cents for every hour of labor performed about its work by the engineering company's employés, exclusive of the office force and superintendent, if the number of hours does not exceed 625,000 per year. If in excess of that number, and less than 750,000, the amount payable should be $37,000. If in excess of the latter, and less than 810,000, the amount should be 5 cents per hour. If in excess of the latter, and less than 900,000, the amount should be $40,500. If in excess of the latter, the amount should be 4½ cents per hour; and generally the amount should not be less than $32,000, nor more than $45,000 [and the times when payments should be made were prescribed]. Defendant should also pay salary of the engineering company's manager, fixed at $6,000, and superintendent not exceeding $3,000, provided their appointments were approved by defendant's general manager. Whenever approval of superintendent should be withdrawn, a new appointment should be made. The superintendent should give his whole time to the business; the general manager as much time as should be necessary. (6) The engineering company should keep buildings in good repair. The expense of ordinary repairs of buildings and machinery and renewal of tools should be borne by the defendant, and deficiencies existing at the end of the term should be supplied by the defendant. (7) The defendant should have the right, at its own expense, to furnish new machines for the purposes of the work, keep them in repair, and remove them at the end of the term. (8) The defendant should have the right to keep at the plant its inspector, an accountant, and the necessary clerical force, the engineering company to furnish rooms for this force; and the accountant should have free access to all the engineering company's books, papers, and memoranda, concerning the operation of the plant and the prosecution of the work under the contract. (9) The engineering company should furnish defendant monthly statements of the amount and cost of all labor done, and kind and quality of material used, in the operation of the plant, and prosecution of the work under the contract. (10) An inventory of the property connected with the plant should be made soon after the contract was made. (11) The engineering company should pay the taxes on plant and any payments due on incumbrances promptly, and not make or permit any sale or disposition of the plant that would interfere with the performance of the work under the contract. (12) [Provision was made for the contingency of a fire in the plant sufficient to interfere with the efficiency of the same, the contract to be terminated, and settlement to be made.] (13) The engineering company should assume all liability for personal injuries at the plant, and save the defendant harmless from such liability. The defendant should pay premium on any insurance policies taken out by the engineering company to cover such risks, and both

companies should be named as the assured in such policies. In case a recovery for such injuries should be had solely against the defendant, it should seek indemnity, in the first instance, from the insurance company, and, if so indemnified, the engineering company should incur no liability therefor."

Under this agreement, it is quite apparent that the engineering company occupied the position, not of an agent or servant of the defendant, but that of an independent contractor. There was no suggestion anywhere of agency. The engineering company owned the plant, and did not lease it to the defendant. It agreed with the defendant to run it entirely for the manufacture of defendant's work for two years; to keep it in repair, and not permit it to be sold for taxes or upon incumbrances; to pay itself all expenses; to do the work, as directed by defendant, so that it would be satisfactory; and the defendant agreed to repay to the engineering company all expenses for supplies and wages of employés, and for repairs to the machinery and tools, and for insurance against accidents; in fact, to pay all expenses of every kind incurred by the engineering company, and then for the use of the plant, furniture, and tools to pay a gross sum, based upon the number of days' work done by employés. It was not agreed that the defendant should hire, pay, or discharge employés, or that the engineering company should do so, as the servant or agent of the defendant. There were provisions as to the engineering company's following the directions of the defendant as to the number of men employed, and what work they should do, and the rate of wages to be paid them, and others of a similar nature; but they were not inconsistent with the absence of agency, and were made because the defendant had to pay the engineering company the amount expended by the latter for wages, and it desired to make sure that its work would be promptly and satisfactorily done, and that no unnecessary expense would be incurred by the engineering company for defendant to pay. The provision as to liability for personal injuries was plainly and distinctly that the engineering company should protect the defendant against such liability. This was provided as a matter of safety to the defendant. It might be claimed, as it is here, that defendant was liable on some theory. The engineering company was ultimately to protect the defendant against such liability. Insurance was provided for, and defendant agreed to pay the premiums therefor as one of the expenses of the business, but in the end, if the insurance company did not afford defendant protection, the engineering company was bound to do so.

A careful examination and consideration of the various provisions of the contract lead us to conclude that the court erred in holding that the relation of master and servant existed between the two corporations, and that the defendant was liable to plaintiff in this case.

Judgment and order reversed, and new trial ordered, with costs to the appellant to abide event upon questions of law only; the facts having been examined, and no error found therein. All concur, except McLENNAN, P. J., and SPRING, J., who dissent.