# CHARLESTON

KNICELEY *v.* WEST VIRGINIA MIDLAND RAILROAD CO.

Submitted March 25, 1908.   Decided March 31, 1908.

1. MASTER AND SERVANT—*Independent Contractor or Servant.*

When a question arises as to whether a person, performing work or doing business for another, is a contractor for whose negligence the employer is not liable, or a servant, for whose acts the employer is responsible, the character of the contract of employment, the nature of the business and all the circumstances are to be considered in determining it.   (p. 279.)

2. SAME.

Though payment for work "by the job," and the right and power of the person doing the work to employ assistants, to be paid by himself, are circumstances tending to prove the relation of contractor and contractee, and so make him an independent contractor, they are not conclusive, and must yield, if it appears that he is merely working under a general employment, having no dominion or control over the premises, is subject at all times to the orders of the employer as to when and how he shall work and the results to be accomplished, and may he discharged at any time. Under such circumstances, the relation of master and servant exists.   (p. 280.)

3. SAME—*Assistant Employed by Servant.*

An assistant employed by a servant, paid according to the work done, not the time of service, is a servant of the person in whose

business his immediate employer is engaged. As there is no direct contract between him and the master, he is a sort of voluntary servant of the latter. (p. 282.)

4. SAME—"*Fellow Servants*"—*Who Are.*

Under the law, relating to negligence in the work of operating or prosecuting the master's business, not provision or maintenance of a safe place in which to work or suitable machinery and appliances with which to work, all persons engaged in the business of a common master and so related that each, in the exercise of ordinary sagacity, ought to foresee, when accepting his employment, that he would be exposed to injury in the event of negligence on the part of the others, and they to injury from his, are fellow-servants. (p 286.)

5. PLEADING—*Issues, Proof and Variance.*

In an action for damages, resulting from injury by negligence, a variance of the evidence from the declaration, in respect to specification of mere matters of detail, concerning the manner, not the time or place at which, or the instrumentalities by which, the injury was inflicted, is immaterial. (p. 288.)

Error to Circuit Court, Braxton County.

Action by F. U. Knicely against the West Virginia Midland Railroad Company. Judgment for plaintiff, and defendant brings error.

*Reversed. Remanded.*

JAKE FISHER and BROWN, JACKSON & KNIGHT, for plaintiff in error.

MORRISON & RIDER, for defendant in error.

POFFENBARGER, PRESIDENT:

F. U. Knicely, injured while unloading lumber from a car of the West Virginia Midland Railroad Company on its tracks, by the jarring or removal thereof without notice, recovered a judgment against said company for damages, resulting from the injury, amounting to $3,250.00, to which a writ of error was allowed.

The principal inquiry is whether the plaintiff and the switching crew of the defendant, who ran a train of cars against the standing car on which the former was at work, when injured, were fellow servants. This relationship, if it existed, precludes recovery and renders practically unnecessary the consideration of every other question raised.

The defendant company's road is a narrow guage railroad, connecting with the Baltimore and Ohio, a standard guage road, about a mile from the small town called Palmer. At Palmer it has an extensive lumber yard, in which the vast quantities of lumber carried by it as a common carrier are transferred to cars of the Baltimore and Ohio, which are run into the yard on a three rail track, for both narrow and standard guage cars and engines, laid on the premises of the defendant. The transfer is effected by running the empty standard guage cars alongside of the loaded narrow guage cars, from which men remove the lumber by hand, using a pointed stool or stand, called a jack, and the point of which operate as a pivot on which the man balances the board and swings one end of it from one car to the other. A switching crew, kept at the yards for handling the loaded and empty cars, shifts them as occasion requires, and independently of any direction or control by the men who actually transfer the lumber from one car to the other. The plaintiff had no direct contract of employment with the defendant. He was employed by one Cowgill, whom the company had employed to transfer the lumber, paying him for the service a certain price per thousand feet, or who, in another view, was removing the lumber as a contractor and not as a servant of the company. The evidence leaves the manner of the injury somewhat in doubt, but there is evidence tending to prove that plaintiff had removed practically all the lumber from the ·car on which he was working, and the train with loaded cars, one of which was to take the place of the car from which he had made the transfer, was coming in on the track as he stooped and lifted the end of a board, and while he was engaged in transferring it, the train struck the car and caused him to fall therefrom, in doing which his foot was caught between a wheel and the reach or side-bar of the car and his leg broken over the wheel. Plaintiff's face was, at the time, turned away from the approaching train and no warning was given him.

Want of power in the plaintiff and his immediate employer to supervise and control the work and operations on the premises on which he was working, and the form of said employer's contract, are the facts mainly relied upon as

the basis of the contention against the existence of the fellow-servantcy relation. All the cars and servants in charge of them were paid by, and subject to the orders and control of, the railway company, as were also the lumber the plaintiff was handling and the grounds upon which the operations were conducted. The plaintiff was paid for his services by Cowgill, who was paid by the railway company for the handling of the lumber at a certain price per thousand feet. The work in which all were engaged was the transportation of lumber, the business of the defendant, all conducted and carried on confessedly in accordance with its orders and directions. Plaintiff's immediate employer had no control of the yard, the cars, the men, nor, indeed, of the lumber. He unloaded such cars and in such manner as the defendant company directed, and placed it where he was ordered to put it. Had he performed this work with his own hands, he would personally have worked on the company's premises and cars, among its servants, and without the slightest dominion or authority over any of them, or over himself or any of its property, beyond the mere handling of such lumber as he was directed to handle. If, in addition to all this, he had been paid daily, weekly or monthly wages, instead of so much per thousand, it would be extremly difficult to conceive even a pretext upon which he could have been regarded as an independent contractor, within the meaning of the law of the subject under consideration. What better situation can his employee occupy? Is his position higher than that of his employer would have been, had he been standing in the shoes of the former and suffered the injury himself? Can a stream rise higher than its source? Can a man confer upon another a greater right or more power than he himself possesses?

In the lack of power of the plaintiff and Cowgill over his surroundings, and subserviency to the orders of the railway company, while engaged in the transaction of its business, lies the very basis of the relationship he denies, and the lack of the independence he asserts on behalf of Cowgill. It shows the latter was not, in any substantial or practical sense, master. He was wholly without dominion or power the very essence of mastery, and unless the mere fact that

he was paid by the piece and not by the day made him an independent contractor, he was a servant of the company along with its other employes. What sort of a contract had Cowgill? He had no engagement to handle any specific, or any stipulated quantity of lumber, or lumber generally for any agreed period of time. The scope of his powers, and the tenure of his position were the same as if he had been working by the day, except that he had the right to employ assistants and was paid by the piece, not by the job, for he had not even a job so far as the evidence discloses.

In assuming that he was the servant of Cowgill and that Cowgill was an independent contractor, the plaintiff totally denies the relation of servant to the railway company. The present inquiry is not whether he was a fellow servant with the other railway men, but whether he was a servant at all, and that depends upon whether Cowgill was a servant. If he was, he could not have a servant as against the railway company. If he was not a servant, he was an independent contractor, and having been master of the work, could have had a servant. In the law of liability for negligence independency of contract and servantcy bear to each the relation of opposition. They are incompatible. Where the one exists the other cannot. Shearman & Redf. on Neg., section 181.

The courts have prescribed several rules for guidance in seeking the true relation of the parties. In *Singer Mfg. Co.* v. *Rahn*, 132 U. S. 518, Mr. Justice Gray said: "And the relation of master and servant exists whenever the employer retains the right to direct the manner in which the business shall be done, as well as the results to be accomplished, or, in other words, 'not only what shall be done, but how it shall be done.'" See the application of this test in *Railroad Co.* v. *Hanning*, 15 Wall. 649, in which the person held to be a servant had a contract to build a wharf, furnishing all the materials and labor. In *Clapp* v. *Kemp*, 122 Mass. 481. the plaintiff had been injured by falling through a coal-hole, connected with defendant's store, while a teamster, employed by the coal dealer, was delivering coal for the store, and the following instruction was approved: "That the defendants, if they were occupants of

the store, would not be liable for the negligence or carelessness of the teamster, if, as the servant of A., he had the exclusive possession or control of the premises so far as was necessary to enable him to deliver the coal.   But if the jury are satisfied that the defendants were at the time the occupants of the store, and, as such occupants, had the right to direct or control the mode or manner of said delivery, then the teamster would be the servant of the defendant, so as to render them liable for injuries occasioned by his negligence or carelessness in the delivery of the coal." We quote here the remarkably clear statement of the rule by Bigelow. C. J., in *Brackett* v. *Lubke*, 13 Allen 138, a case in which the plaintiff's house had been injured by the falling thereon of that of the defendant while a carpenter was engaged in putting an additional story under the latter pursuant to a contract, specifying what was to be done and how: "The distinction on which all cases turn is this: If the person employed to do the work carries on an independent employment, and acts in pursuance of a contract with his employer by which he has agreed to do the work on certain specified terms, in a particular manner and for a specified price, then the employer is not liable. The relation of master and servant does not subsist between the parties, but only that of contractor and contractee. The power of directing and controlling the work is parted with by the employer, and given to the contractor. But on the other hand, if work is done under a general employment, and is to be performed for a reasonable compensation or for a stipulated price, the employer remains liable because he retains the right and power of directing and controlling the time and manner of executing the work, or of refraining from doing it, if he deems it necessary or expedient." The carpenter was held to be a contractor, not a servant, and right of recovery against the owner denied. In *Vogel* v. *Mayor &c.*, 92 N. Y. 18, Earl, J., said: "To make the city liable, it must have the power to direct and control the manner of performing the very work in which the carelessness occurred." See also *Kelley* v. *Mayor*, 11 N. Y. 432; *Pack* v. *Mayor*, 8 N. Y. 222; and *Charlock* v. *Freel*, 125 N. Y. 357. In *Donovan* v. *Laing &c. Syndicate*, 1 Q. B. 1893, 629, Lord Esher said: "Whose servant was the man in-

charge of the crane as to the working of it? It is true the defendants selected the man and paid his wages, and these are circumstances which, if nothing else intervened, would be strong to show that he was the servant of the defendants. So, indeed, he was as to a great many things; but as to the working of the crane he was no longer their servant, but bound to work under the orders of Jones & Co., and, if they saw the man misconducting himself in working the crane or disobeying their orders, they would have a right to discharge him from that employment." In *Johnston* v. *Haste*, 30 U. C. 232, a man having a contract to clear land at a certain price per acre, put out fire, by direction of his employer, which spread on to the lands of the plaintiff, destroying his fences, and it was held that the man so employed was a mere servant, because his employer had the power of direction and control over him. For additional cases, see 16 Am. & Eng. Ency Law, 187, note 6. And if the right of control is in the employer, it is immaterial whether he actually exercises it. 16 Am. & Eng. Ency. Law 188 and cases cited. Whether the premises are surrendered to the workman is regarded as important. *Mumby* v. *Bowden*, 25 Fla. 454; *Jefferson* v. *Jameson &c. Co.* 165 Ill. 138. Nor is the manner in which the compensation is to be determined conclusive. If payment is made "by the job" it is evidence of an independent contract, but only a circumstance. 15 Am. & Eng. Ency. Law 189, citing cases fully sustaining the text, and among others, *Holmes* v. *Tennessee Coal & C. Co.*, 49 La. Ann. 1465, in which a person employed by a coal company to unload its coal at a stipulated price per car load was held to be not an independent contractor, but a servant of the company. How many conceivable instances of employment in which compensation is determined by the amount of work done instead of by the time employed, are there? Hundreds of thousands of "piece workers" in factories, coal miners, paid by the bushel, railway engineers, paid according to mileage, and thousands of others. If that made an employee an independant contractor, it would be possible for employers to farm out all their work and, with it their liability by a very simple operation. Nor is it more than a mere circumstance, having more or less probative force, that the general employer has

not, or has delegated, the power to hire and discharge the men. *Railway Co.* v. *Peterson*, 162 U. S. 346; *Jackson* v. *Railroad Co.*, 43 W. Va. 380. These propositions are stated in Shearman & Redfield on Negligence, 164 to 166, and fully discussed. They are fundamental, and application thereof to the facts in this case make Cowgill, plaintiff's employer, a servant of the railway company. That being so, what was the status of the plaintiff? As to the railway company a voluntary servant. "One who, without being requested or authorized by the master to do so, assists his servants to serve him, is deemed to be so far their fellow-servant as to limit the liability of the master to him, even though he would not be regarded as a servant so far as to make the master liable to strangers for his negligence. This is so where such assistance is given by the request of the servants; and it can make no difference in his favor that the person rendering such assistance does so unasked or even against the will of the master or of the servants, or both. In such case he may be a trespasser; and if so, he diminishes his right to recover for an injury received under such circumstances by his contributory fault. On the other hand, if his assistance is rendered at the request of the master or his authorized agent, he becomes for the time a servant in every legal sense, with the benefits as well as the burdens of that position." Shear. & Redf. on Neg., section 182. *Pennsylvania Co.* v. *Gallagher*, 40 O. St. 637, is a good illustration of this. A Baltimore and Ohio Railroad Company servant called his son to his assistance in repairing a car, and while doing so the son was injured by servants of the Pennsylvania Railway Company in backing a train. The Court said the son was a fellow servant of the father in the employment of the Baltimore and Ohio road and was not a trespasser. That Knicely was paid by Cowgill makes no difference. The railway company contemplated the employment of assistants, and, when employed, they were rightfully on the premises and rendering service to the company as if employed by it. As to it they were voluntary servants, but servants nevertheless. In *Ewan* v. *Lippincott*, 47 N. J. L. 192, the servant of a machinist had been injured by the servant of the owner of a mill on which the mechanic was working as the paid servant of the ma-

chinist. The court said: "The owner of the mill had the control of the workmen to the same degree that he would have had over the masters of the workmen had they done the work personally. He had the power to direct the work in regard to the extent and character of the alterations, and in respect to the time at which and the circumstances under which it was done. He had the power to change, terminate or suspend the work at any moment. Had an injury resulted to a third person by reason of the negligent act of such workman while acting within the line of the employment for which Derby & Weatherby had been engaged, there could be no doubt that the defendant would have been liable to the injured person." Parallel cases are those of *Killea* v. *Faxon*, 125 Mass. 485; *Johnson* v. *Boston*, 118 Mass. 114; *Hasty* v. *Sears*, 157 Mass. 123; *Saunders* v. *Coleridge*, 72 Feb. Rep. 676.

Having thus determined that the plaintiff was a servant of the defendant, we inquire whether he was a fellow servant with the switching crew. They were all engaged in the service of a common master, about the same business and in such close proximity as to influence the conduct of, and be subject to injury by, one another. Under the rule prevailing throughout the country, and adopted in this State, were they not fellow-servants? They are obviously within the rule prescribed in *Jackson* v. *N. & W. Ry. Co.*, 43 W. Va. 380, for determining who are fellow-servants. "Under the generally prevailing rule, fellow-servants are engaged in a common employment when each of them is occupied in service of such a kind that all the others, in the exercise of ordinary sagacity, ought to be able to foresee, when accepting their employment, that his negligence would probably expose them to the risk of injury." Shear. & Redf. on Neg., section 236. In *Jackson* v. *Railroad Co.* abundant authority, showing that different train crews on the same railroad are fellow-servants, is cited. How much closer is the relation of two sets of men handling freight on the same yard and from the same cars in different capacities? Except in a few of the states in which the rule in force in this State is not recognized, common employment "includes all employed in the same factory, mill, shop, ware house or office, all employed in operating

the same mine, whether above or below, all persons employed upon the trains, yards, stations and depots of the same railroad, and certainly all co-operating in a single piece of work or the construction of a single thing, such as a building, no matter how different their special lines of work may be." Shear. & Redf. on Neg., section 239. At section 241 of the same work, the following illustrations of non-liability are given: "For the negligence of a locomotive engineer or electric motorman, causing injury to a conductor, brakeman, fireman, or other servant, on the same train, or on any other train of the same master on the same road, or on a hand car, or employed in any capacity upon the track, or to a switchtender, a car-coupler, a car-repairer, a section-boss, a yard-master, a station-agent or a general superintendent. Nor is the common master liable for the neglinence of a brakeman, injuring a switchman, a car inspector or car-repairer, a station-master, a train-loader or any servant on his train; nor for the negligence of a man watching the track, injuring an engineer, fireman or conductor of a train, a switchman or a laborer upon the track; nor for the negligence of a switchman, injuring an engineer, a fireman, a flagman, car-repairer or train-loader; nor for the negligence of a fireman on an engine, injuring a brakeman or track repairer; nor for the negligence of a baggage-master, injuring a conductor; nor for that of a car-repairer (otherwise than in omission to repair), injuring a yardmaster." An authority relied upon by the attorney for the defendant in error is 12 Am. & Eng. Ency. Law, 995, saying: "Servants of an independent contractor and servants of the principal by whom the contractor is employed are not fellow servants, although they may work side by side in a common employment, if they are not under the control of a common master." Cowgill having been a servant, this has no application. Another is *Dixon* v. *Chicago & Alton Ry. Co.*, 18 L. R. A. 792. That case arose under the "Department Rule" of fellow-servantcy, overthrown in this State by the decision in *Jackson* v. *N. & W. Ry. Co.*, cited. It is not law in this State. The Jackson case says: "A master's liability to one servant for the negligence of another is not dependent on the grade of the servants, nor on the fact that

one has authority over the other, but on the character of the negligent act." For a clear statement of the distinction between that rule and ours see Shearman and Redf. on Neg., secs. 238 and 239.

We are called upon to say whether the evidence should have been excluded on the ground of variance, because it shows the injury to have been inflicted in a manner somewhat different from that stated in the declaration. This difference relates to mere matter of detail. The declaration says the collision caused lumber to be thrown on the plaintiff, while the proof is that it caused him to fall from the car. There are general averments of negligence. This is mere erroneous matter of specification, and the variance, if any, is immaterial. *Hanley* v. *Railway Co.*, 59 W. Va. 419, and cases there cited. For the position of the attorneys for plaintiff in error, *Hawker* v. *Railway Co.*, 15 W. Va. 628, is cited, but it was radically different from the present case in this, that it charged negligence at a particular time and the court gave instructions, authorizing the jury to find the defendant guilty of negligence at a different time.

For the reasons stated, the judgment will be reversed, the verdict set aside and the case remanded for a new trial.

*Reversed. Remanded.*