BOKOSHE SMOKELESS COAL CO. *et al.* v. MOREHEAD.

No. 1804.   Opinion Filed May 14, 1912.

Rehearing Denied August 20, 1912.

(126 Pac. 1033.)

1.   MASTER AND SERVANT—Injuries to Servant—Relation of Parties—Independent Contractor.   The Bokoshe Smokeless Coal Company subleased to Henderson a coal mine.   Henderson agreed to operate the mine in accordance with the acts of Congress and the rules of the Interior Department relating to the leasing of Indian coal lands, and in such manner as to insure the largest production of coal; to maintain in good working order all entrances, gangways, air courses, slopes, shafts, and planes; to maintain pillars when necessary; to keep within certain boundaries; to preserve the buildings and machinery in good condition; to assume all liability for personal injuries, or otherwise; to pay a royalty upon each ton of coal mined; to permit the coal company to collect the proceeds of all sales, out of which it should reserve its royalty and pay over the balance to Henderson.   The coal company reserved the right to inspect, examine, and survey* the premises at any time, and it was agreed that all the ''workings'' on the premises should ''be done under the general supervision of the superintendent of the'' company.   Held, that Henderson was an independent contractor.

2.   SAME.   The retention by the owner of the right of general supervision of the work of a contractor does not prevent the contractor from being an independent contractor.

3.   SAME.   A contract which, upon its face, creates the relation of owner and independent contractor, will not protect the owner from liability for negligence of the contractor, if it is designed as a mere subterfuge to shield the owner from liability for his negligence.

4.   SAME—Actions—Sufficiency of Evidence.   The evidence examined, and held insufficient to show that the contract was a subterfuge, or that the owner was operating the mine.

5.   SAME — Injuries to Servant—Relation of Parties—Independent Contractor.   If the lessee of Indian coal lands sublets the mine without the approval of the Secretary of the Interior, and if an employee of such sublessee sustains injuries by reason of the negligence of the sublessee, the invalidity of the sublease does not strike down the relation of master and servant existing between the sublessee and his employee, nor create the relation of master and servant between the original lessee and the employee of his sublessee, and such employee cannot recover damages from such lessee.

(Syllabus by Ames, C.)

*Error from District Court, Le Flore County;*
*Malcolm E. Rosser, Judge.*

Action by Robert H. Morehead against the Bokoshe Smokeless Coal Company and Edward Henderson. Judgment for plaintiff, and defendants bring error. Reversed and remanded.

*Porter H. Morgan* and *Shartel,. Keaton & Wells,* for plaintiff in error Bokoshe Smokeless Coal Co.

*J. L. Spangler* and *Tom W. Neal,* for plaintiff in error Henderson.

*Rowe & Rowe* and *Day & DuBois,* for defendant in error.

Opinion by AMES, C. The plaintiff, Morehead, sued the defendants for personal injuries, upon the theory that they were jointly his employers, and that their joint negligence in giving an order caused his injuries. He alleged that at the time of the injuries he was engaged in cutting and shearing down the top vein of coal in the main slope of the defendant's mine; that he had had no previous experience in doing such work; that he informed the defendants of this inexperience; that the defendants failed to warn him of the dangers attendant upon the work; that they ordered him to cut and shear the coal in the main slope of the mine and failed to warn him of the danger, and that on account of such negligence he sustained the injuries; that after cutting the coal on each side of the slope, and before it had been prized down, they. negligently ordered him to clear the track underneath this coal; and that while so doing the coal fell upon him and injured him.

The most important question in the case is whether the relation of master and servant existed between Morehead and the Bokoshe Smokeless Coal Company, or whether Henderson was an independent contractor, as pleaded by the Coal Company. The Coal Company was operating two or three mines at Bokoshe, but denied that it was operating this mine, or that it was the employer of the plaintiff, and as its defense it pleaded and proved a contract existing between it on the one part and Henderson and others on the other part, in which the company is designated as

contractor and Henderson and his associates as subcontractors. By the terms of this contract, Henderson agreed to operate the mine subject to the acts of Congress bearing upon the subject and the rules of the Department of the Interior; to operate the mine in such manner as to insure the production of the largest amount of coal; to maintain in good working order all entrances, gangways, air courses, slopes, shafts, and planes; to maintain pillars where necessary to support the roofs; not to approach nearer than 50 yards to the outside boundaries of the land; and to maintain all buildings and machinery and other appurtenances in good condition at all times. Henderson and his associates, by the contract, assumed all liability in the operation of the mine, and agreed to protect the Coal Company from all claims for damage for personal injury of every kind growing out of the operation of the mine. The subcontractors were to pay a royalty of fifteen cents per ton on all coal mined during the first year, and thereafter a royalty of twenty cents per ton. The sales were to be made by the subcontractors, and collections were to be made by the Coal Company, which should retain its royalty and pay over the balance. The subcontractors were to pay all taxes of every kind. Many other details are provided in the contract. The Coal Company reserved the right to inspect, examine, and survey the premises at any time, and Henderson and his associates agreed to make a survey at least every six months and furnish the Coal Company with a blue print showing the location of all the mine workings. The last paragraph of the contract is as follows:

"In consideration of the premises the said subcontractors hereby covenant and agree to operate all mines which may be dug on said premises in compliance with the laws of the state of Oklahoma, and it is further agreed that all the workings on said premises shall be done under the general supervision of the superintendent of the said contractor."

The plaintiff claims that this provision of the contract reserves such a right of control in the Coal Company as to make Henderson its foreman and the plaintiff its servant instead of Henderson's servant, while the Coal Company claims that Henderson was an independent contractor, that the plaintiff was

Henderson's servant, and that, there being no relation between it and the defendant of master and servant, the action will not lie. There are numerous decisions upon the subject of independent contractors, and an examination of some of them may enable us to reach a correct conclusion upon this question. Three cases have been before this court involving the question. In *M., K. & O. Ry. Co. v. Ferguson,* 21 Okla. 266, 96 Pac. 755, it was held that a railroad company, by letting a contract to build its right of way fence to an independent contractor, absolved itself from liability for the negligence of such contractor. In *Chas. T. Derr Construction Co. v. Gelruth,* 29 Okla. 538, 120 Pac. 253, it was held that under the terms of the contract in that case, entered into between the city and the construction company, the relation of master and servant existed between the employees of the construction company and the city, but in the contract between the city and the construction company the city reserved a very extensive control and supervision, even to the extent of requiring the contractor to discharge his servants. The measure of control is stated in the opinion as follows:

"The contract provided that the contractor should carry on and prosecute said work during suitable weather as the city's engineer should direct, and to cease work when said engineer deemed it advisable; that said engineer might at any time change form or plan, grade, or section, elevation, or location of any parts or portion of said work as he should find best and proper; that, if such changes increased the amount of work, material, or both, it was to be paid for *pro rata* at the bid price, and, if it decreased the cost, the same was to be deducted in proportion; that all lines, grade stakes, reference points, and other location details were to be furnished by the engineer, the contractor to observe and preserve the same carefully, etc.; that, if the mayor and council saw fit, they might submit to the contractor such orders, directions, and instructions as they wished for the proper carrying out of said contract, and that said contractor should obey the same; that the mayor and council should have full authority over the work, or they might delegate such authority to an engineer, such to be done by resolution of the council; that the work should be commenced and carried on from point to point as designated by the engineer, who, in connection with the mayor and council, should have general supervision thereof, either in person or by properly appointed inspectors; that if at any time

any one employed by the contractor appeared to the city's inspector to neglect or refuse to obey orders, or to be incompetent, unfaithful, disorderly, or fail to show proper interest in his work, the contractor, when requested by said inspector, should discharge such party and not re-employ him."

In *Hamilton et al. v. Oklahoma Trading Co. et al.,* 33 Okla. 81, 124 Pac. 38, it was held that "laborers engaged to use their employer's truck to truck a car load of flour from the sidewalk into the building are servants and not independent contractors."

The question, then, for determination is whether or not the plaintiff in this case was the servant of the Coal Company or of Henderson, and this, in turn, involves the question whether or not Henderson was the servant of the Coal Company, operating the mine as its manager, or whether he was an independent contractor, operating the mine for his own benefit.

In the three cases which have been decided by this court the so-called independent contractor was performing a service for the owner: In the first case, building a fence for the owner; in the next case, building a sewer for the city; and in the last case, trucking a car load of flour for the owner. In the case at bar Henderson was not paid to work the mine for the Coal Company, but he paid the Coal Company for the privilege of working the mine. He worked the mine for himself, all the coal which he mined belonged to him, and he paid a royalty to the Coal Company, and is clearly an independent contractor, or a sublessee, unless the provision of the contract reserving to the Coal Company the right to exercise a general supervision over the workings of the mine changes the status. The "workings" of a mine embrace the entrances, slopes, crosses, and rooms, and these were to be constructed under the general supervision of the owner. The company does not reserve the right to employ or discharge Henderson's servants, to fix their wages, to direct the mode or manner of doing their work, but merely reserves this general right of general supervision over the workings of the mine.

In *New Orleans, M. & C. R. Co. v. Hanning,* 15 Wall. 649, 21 L. Ed. 220, in holding that an alleged subcontractor was not an independent contractor, it is said:

"The rule extracted from the cases is this: The principal is liable for the acts and negligence of the agent in the course of his employment, although he did not authorize or did not know of the acts complained of. Story, Ag. sec. 452; 2 Add. Torts (2d Ed.) 343. So long as he stands in the relation of principal or master to the wrongdoer, the owner is responsible for his acts. When he ceases to be such, and the actor is himself the principal and master, not a servant or agent, he alone is responsible. Difficult questions arise in the application of this rule. Nice shades of distinction exist, and many of the cases are hard to be reconciled. Here the general management and control of the work was reserved to the company. Its extent in many particulars was not prescribed. How and in what manner the wharf was to be built was not pointed out. That rebuilt was to be as good as new. The new was to be of the best workmanship. This is quite indefinite and authorizes not only, but requires, a great amount of care and direction on the part of the company. The submission of the whole work to the direction of the company's engineer is evidence, although not conclusive, that the company retain the management and control. The reservation of authority is both comprehensive and minute. The company have the general control, and it may prescribe where each pile shall go, where each plank shall be laid, where each stringer shall be put down, where each nail shall be driven. All the details are to be completed under their orders and according to their direction. The contractor undertakes in general terms to do the work well. The company reserves the power, not only to direct what shall be done, but how it shall be done. This is an important test of liability. *Kelley v. Mayor,* 11 N. Y. 432."

In *Singer Manufacturing Co. v. Rahn,* 132 U. S. 518, 10 Sup. Ct. 175, 33 L. Ed. 440, in holding that the relation of independent contractor did not exist, it is said:

"The contract between the defendant and Corbett, upon the construction and effect of which this case turns, is entitled 'Canvasser's Salary and Commission Contract.' The compensation to be paid by the company to Corbett for selling its machines, consisting of 'a selling commission' on the price of machines sold by him, and 'a collecting commission' on the sums collected of the purchasers, is uniformly and repeatedly spoken of as made for his 'services.' The company may discharge him by terminating the contract at any time, whereas he can terminate it only upon ten days' notice. The company is to furnish him with a wagon, and the horse and harness to be furnished by him are 'to be used exclusively in canvassing for the sale of said machines

and the general prosecution of said business.' But, what is more significant, Corbett 'agrees to give his exclusive time and best energies to said business,' and is to forfeit all his commissions under the contract, if, while it is in force, he sells any machines other than those furnished to him by the company; and he further 'agrees to employ himself under the direction of the said Singer Manufacturing company, and under such rules and instructions as it or its manager at Minneapolis shall prescribe.' In short, Corbett, for the commissions to be paid him, agrees to give his whole time and services to the business of the company, and the company reserves to itself the right of prescribing and regulating not only what business he shall do, but the manner in which he shall do it; and might, if it saw fit, instruct him what route to take, or even at what speed to drive."

In *Casement v. Brown*, 148 U. S. 615, 13 Sup. Ct. 672, 37 L. Ed. 582, in holding that the relation of independent contractor did exist, it is said:

"With reference to the first contention, obviously the defendants were independent contractors. The plans and specifications were prepared and settled by the railroad companies. The size, form, and place of the piers were determined by them, and the defendants contracted to build piers of the prescribed form and size and at the places fixed. They selected their own servants and employees. Their contract was to produce a specified result They were to furnish all the material and do all the work, and by the use of that material and the means of that work were to produce the completed structures. The will of the companies was represented only in the result of the work, and not in the means by which it was accomplished. This gave to the defendants the status of independent contractors, and that status was not affected by the fact that, instead of waiting until the close of the work for acceptance by the engineers of the companies, the contract provided for their daily supervision and approval of both material and work. The contract was not to do such work as the engineers should direct, but to furnish suitable material, and construct certain specified and described piers subject to the daily approval of the companies' engineers. This constant right of supervision, and this continuing duty of satisfying the judgment of the engineers, do not alter the fact that it was a contract to do a particular work, and in accordance with plans and specifications already prepared. They did not agree to enter generally into the service of the companies, and do whatsoever their employers called upon them to do, but they contracted

for only a specific work. The functions of the engineers were to see that they complied with this contract; 'only this, and nothing more.' They were to see that the thing produced and the result obtained were such as the contract provided for. *Carman v. Railroad Co.,* 4 Ohio St. 399, 414; Wood, Mast. & Serv. p. 610, sec. 314."

These three cases, presenting both sides of the question, illustrate very clearly the ultimate question to be ascertained, to wit: Is the plaintiff the servant of the owner, or the servant of the contractor? If the owner's servant, then, of course, the contractor is not an independent contractor, while, if the contractor's servant, then, of course, the contractor is independent. In the Hanning case, *supra,* it was held that the contractor was not independent, because the owner reserved, not the mere right of supervision, but the right of controlling the minute details of the work, thus making the contractor merely an employee. In the Rahn case, *supra,* he was not an independent contractor, because again he was a mere employee, putting in his whole time for his employer and working under the direction, supervision, and control of his employer. In the Brown case, *supra,* he was an independent contractor, because he had a contract in the performance of which he was independent, subject only to the acceptance and supervision of the owner.

If the right to inspect and exercise a general supervision destroys the independence of the contractor, then it would follow that there would be no such thing as an independent contractor, because no one is going to let a contract without reserving the right to see that it is performed in accordance with the contract, and, if he has no right to supervise, no right to inspect, and no right to reject, then he would not let the contract at all. In *Callan v. Bull,* 113 Cal. 593, 45 Pac. 1017, it is said in the syllabus:

"In an action for personal injuries, it appeared that defendant entered into a contract with agents of the United States to construct a harbor jetty; that plaintiff was injured by the breaking of a cap on a bent, which had been negligently constructed. The contract provided that: 'The work is to be executed under the supervision of the engineer officer in charge, or his agent. * * * No material of any description will be placed in the

works without his knowledge and instructions at the time. * * * The contractor must keep upon the works at all times responsible agents, who shall have full authority to carry out the instructions of the agent of the United States; * * * and all material, supervision, and labor furnished by the contractor will be subject to the approval of the engineer officer in charge.' *Held,* that defendant was not the agent of the United States in the performance of the contract, but, under its provisions, was an independent contractor and employer."

In *Good v. Johnson,* 38 Colo. 440, 88 Pac. 439, 8 L. R. A. (N. S.) 896, the second paragraph of the syllabus is as follows:

"A construction company, under contract to construct a road-bed for a railroad company, let a contract for grading a part of the road to a contractor, who, in turn, sublet a part of it to a third party under a written contract requiring the work to be performed under the supervision of the engineer of the construction company, who was empowered to discharge employees of such sub-contractor, and to notify him to increase the force of men if necessary, and authorizing the engineer to cancel the contract under certain conditions, and requiring the subcontractor to save the contractor harmless from all damages that might be caused to third persons during the prosecution of the work, and giving the option to the contractor to pay wages directly to the employees of the subcontractor. *Held,* that such contract did not create the relation of master and servant between the contractor and subcontractor, so as to create a liability upon the part of the former for injuries received by an employee of the latter."

In *Lampton v. Cedartown Co.,* 6 Ga. App. 147, 64 S. E. 495, the second paragraph of the syllabus is as follows:

"The fact that the owner of a building to be constructed furnishes to the contractor the material for the building, or stipulates in the contract that the work of constructing the building shall be performed by the contractor according to plans and specifications of an architect, and to the satisfaction of the engineer of the owner, does not make the latter liable for an injury resulting proximately and solely from a negligent act of the contractor in the work of construction."

In *Pioneer Fireproof Construction Co. v. Hansen,* 176 Ill. 100, 52 N. E. 17, the second, third, and fourth paragraphs of the syllabus are as follows:

"Whether one engaged in performing work under a written contract is an independent contractor, and, as such, liable for the

negligent acts of his servants, is a question of law, to be determined by a construction of the contract itself.

"A building contractor who lets a portion of the work to a subcontractor does not, by retaining the power to inspect the work to see that it is honestly performed, become the master of the subcontractor's employees, so as to be liable for their negligent acts.

"One cannot be held liable as master, under the doctrine of *respondeat superior,* who does not have the power of discharging the party whose negligent act occasioned the injury."

To the same effect are *Bayer v. Chicago, M. & N. R. Co.,* 68 Ill. App. 219; *Fitzpatrick v. Chicago & Western Indiana R. Co.,* 31 Ill. App. 649; *Geist v. Rothschild & Co.,* 90 Ill. App. 324.

In *New Albany Forge & Rolling Mill v. Cooper,* 131 Ind. 363, 30 N. E. 294, it is held that the owner's reservation of the right to discharge employees of a contractor does not destroy the independent nature of the contract.

In *Louisville & N. R. Co. v. Smith's Adm'r,* 134 Ky. 47, 119 S. W. 241, it is said in the syllabus:

"The employer of plaintiff's intestate contracted with defendant railroad to do sundry masonry work for it for two years at stipulated prices, and was engaged under the contract in excavating for a new culvert when intestate was killed. The company had put in false work to support the track while the culvert was being built, and kept a man there to see that the track was safe for passing trains, but had no control over the contractor as to the manner of doing the work, except to see that it was according to the specifications furnished him, and he employed and controlled his workmen, either personally or through this foreman. *Held,* that intestate's employer was an independent contractor, and not an employee of the railroad company."

A provision that a piece of railroad shall be constructed under the general supervision of the chief engineer of the company does not destroy the independent nature of the contract. *Eaton v. European & North. Am. Ry. Co.,* 59 Me. 520, 8 Am. Rep. 430. A carpenter who agrees to raise and put another story under a house, to furnish material therefor, and complete the same "to the satisfaction of the owner," for a fixed sum, is an independent contractor. *Conners v. Hennessey,* 112 Mass. 96. A contract to do all the mason work on a building for the cost price of the

labor and material and a commission thereon makes of the mason an independent contractor, although he takes his orders from the owner's architect. *Morgan v. Smith,* 159 Mass. 570, 35 N. E. 101. A sewer contractor who agrees to build a sewer according to plans and specifications, the work to be done to the satisfaction and acceptance of the superintendent of sewers, subject to his inspection and direction at all times, is an independent contractor. *Harding v. City of Boston,* 163 Mass. 14, 39 N. E. 411. A contractor who agrees to construct a telephone system, the work to be done under the supervision and subject to the approval of the owner, is an independent contractor. *Vosbeck v. Kellogg,* 78 Minn. 176, 80 N. W. 957. In *Kirby v. Lackawanna Steel Co.,* 109 App. Div. 334, 95 N. Y. Supp. 833, it is said in the syllabus:

"The owner of a manufacturing plant agreed with defendant to run it entirely for the manufacture of defendant's work for a specified time, to keep it in repair, to pay all expenses, to do the work as directed by defendant, and defendant agreed to repay to the owner all expenses for supplies, wages, repairs, and insurance; but it was not agreed that defendant should hire, pay, or discharge employees. It was provided that the owner should follow defendant's directions as to the number of men employed, what work they should do, and the rate of wages to be paid. *Held,* that the relation of master and servant did not exist between the owner and defendant, but the owner was an independent contractor."

The retention of general supervision does not destroy the independence of the contractor. *Hawke v. Brown,* 28 App. Div. 37, 50 N. Y. Supp. 1032; *Clare v. National City Bank,* 40 N. Y. Super. Ct. 104. Even though the owner reserves the right during the progress of the work to define and direct its scope, and to require the contractor to increase his force of workmen during the progress of the work. *Hopper v. Ordway & Sons* (N. C.) 72 S. E. 839. The reservation of a railroad company of the right to approve a contractor's work by its chief engineer, and to employ an assistant engineer, and to require an increase of the working force and the discharge of improper hands, does not destroy the independent nature of the contract. *Rogers v. Florence Railroad Co.,* 31 S. C. 378, 9 S. E. 1059; *Thomas v.*

*Altoona & Logan Valley Electric Railway Co.,* 191 Pa. 361, 43 Atl. 215. In *Powell v. Virginia Const. Co.,* 88 Tenn. 692, 13 S. W. 691, 17 Am. St. Rep. 925, in an opinion delivered by Judge Lurton, it was held, under a contract for the construction of a part of a railroad as far as the company's chief engineer might determine, in which the company agreed to furnish a locomotive and train with engineer and fireman and brakeman for the use of subcontractors, that while engaged in such work the train crew were the servants of the subcontractors, for whose negligence in the management of the train the company was not liable. And in *Louisville & N. R. Co. v. Cheatham,* 118 Tenn. 160, 100 S. W. 902, it is held that a railroad contractor is an independent contractor, although the contract provides that the work shall be done to the satisfaction of the company's engineer, who may make any alterations which he deems necessary, and decide on the quality and quantity of the work done, that the contractors shall discharge employees at his direction, and that he may employ additional laborers at the expense of the contractor, and that the company shall furnish necessary rails, switches, etc., for temporary track, without charge. To similar effect are *Powell v. Virginia Construction Co.,* 88 Tenn. 692, 13 S. W. 691, 17 Am. St. Rep. 925; *Bibb's Adm'r v. N. & W. R. Co.,* 87 Va. 711, 14 S. E. 163; *Smith v. Milwaukee Builders' & Traders' Exchange,* 91 Wis. 360, 64 N. W. 1041, 30 L. R. A. 504, 51 Am. St. Rep. 912; *Richmond v. Sitterding,* 101 Va. 354, 43 S. E. 562, 65 L. R. A. 445, 99 Am. St. Rep. 879, and an elaborate note; *Salliotte v. King Bridge Co.,* 58 C. C. A. 466, 122 Fed. 378, 65 L. R. A. 620, and an elaborate note; *Kniceley v. W. Va., M. R. Co.,* 64 W. Va. 278, 61 S. E. 811, 17 L. R. A. (N. S.) 370, and an elaborate note.

In *Ziebell v. Eclipse Lumber Co.,* 33 Wash. 591, 74 Pac. 680, the syllabus is as follows:

"One employed to take charge of a shingle mill, employ and pay all laborers, make all repairs, manufacture shingles from timber furnished by the owner, install at his own expense any necessary new machinery to be furnished on his requisition by the owner, and to receive a stipulated sum per thousand for the

shingles manufactured, is not an agent for whose negligence the owner is liable, but an independent contractor."

Applying the principles laid down in these authorities, we reach the conclusion that under the contract the relation of master and servant did not exist between the Coal Company and the plaintiff.

But the plaintiff alleges that, notwithstanding the contract, the Coal Company, at the time of his employment, and at the time of the injuries, was in the actual management and control of the mine, and that it is liable as his master. Of course, the contract would not protect the Coal Company if this were true, as, under these circumstances it would be a mere subterfuge, and if it was merely designed as a subterfuge to protect the Coal Company from liability which it should incur, it would be ineffective. *Consolidated Coal Co. of St. Louis v. Seniger,* 179 Ill. 370, 53 N. E. 733; *Long v. Moon,* 107 Mo. 334, 340, 17 S. W. 810. But we do not think the evidence in this case tends to support this position. The evidence relied on by the plaintiff is that he applied to the superintendent of the Coal Company for employment, and that the superintendent sent him to Henderson, saying that he thought he could get on there; that Henderson's employees drew their wages once or twice from the Coal Company's office; that Henderson procured from the company some scales, two pit cars, some rails and some timbers for use in the mine; and that the company's superintendent was at the mine frequently, and at one time offered a suggestion with reference to the repair of an engine. This evidence standing alone is not sufficient to show that the company was operating the mine, but it appears from the uncontradicted evidence of the Coal Company that the wages paid at its office were paid once or twice as a matter of convenience, on account of the sickness of Henderson's bookkeeper, and that the money was furnished by Henderson, that the scales, pit cars, rails, and timbers procured by Henderson from the Coal Company were purchased from it and paid for, and that, when Oliver was at the mine, it was merely under the contract, and that at no time did he exercise any right of control over Henderson's employees, or mode or method of doing the work. Un-

der this evidence, we do not think the question of the Coal Company's liability should have been submitted to the jury, but that its request for a peremptory instruction should have been granted.

In *Smith v. Belshaw,* 89 Cal. 427, 26 Pac. 834, the syllabus is as follows:

"In an action for negligence in suffering the roof of a drift in a coal mine to remain without support, whereby it fell upon and injured a miner, it appeared that several months prior to the accident, defendant, being the owner; turned over the possession and management of the mine to one D., who from that time employed and paid the workmen and operated the mine for his own benefit. *Held,* that there was no relation between the parties whereby a liability could arise, and the fact that the miners were paid at defendant's store, and that some of them thought they were working for defendant, was immaterial."

In *Good v. Johnson,* 38 Colo. 440, 88 Pac. 439, 8 L. R. A. (N. S.) 896, the third paragraph of the syllabus is as follows:

"An employee of a subcontractor, occupying the position of an independent contractor, sought to recover from the contractor for an injury received. The employee testified that he was employed by the contractor, but admitted that he was directly employed by the subcontractor, who was the agent of the contractor for employing laborers. The contractor exercised the option to protect himself against liens by paying the wages of the employees of the subcontractor. The payment was by checks, showing that they were given for work done on account 'pay roll' of subcontractor. The contractor never represented that the subcontractor was his servant. *Held,* that the contractor was as a matter of law not liable on the ground of equitable estoppel for the injuries received."

But it is argued that, as the mine was located upon Indian land, and as a sublease, under the rules of the Secretary of the Interior, must be approved by him, and as this sublease to Henderson had not been approved by the Secretary of the Interior, therefore it was void, and that, the lease being void, it could not protect the Coal Company from liability. In support of this position counsel cite *Light v. Conover,* 10 Okla. 732, 63 Pac. 966; *Bass v. Smith,* 12 Okla. 485, 71 Pac. 628; *Owens v. Eaton,* 5 Ind. T. 275, 82 S. W. 746; *Smythe v. Henry* (C. C.) 41 Fed.

705; *Pennsylvania Co. v. Ellett,* 132 Ill. 654, 24 N. E. 559; *Ricketts v. C. & O. Ry. Co.,* 33 W. Va. 433, 10 S. E. 801, 7 L. R. A. 354, 25 Am. St. Rep. 901. It is sufficient to say of the first four cases cited that they all involve the right to enforce a void contract. *Light v. Conover, supra,* was an action to recover rents under a lease, which was void, because not carrying the approval of the Department of the Interior. *Bass v. Smith, supra,* was an action to enforce the specific performance of a contract to acquire a portion of the public domain for the benefit of another, in express violation of statute. In *Owens v. Eaton, supra,* it was held that a lease of agricultural Indian land was terminated and rendered void by an act of Congress, and that thereafter the lessor could not recover from the lessee in unlawful detainer, while *Smith v. Henry, supra,* is a general application of equitable principles to void contracts. The last two cases cited— *Pennsylvania Co. v. Ellett, supra,* and *Ricketts v. C. & O. Ry. Co., supra*—are cases in which the lessor of a railroad was held jointly liable with the lessee in actions brought for breach of a duty owing the public. The ground on which these cases and other similar ones are rested is that a public service corporation is granted special privileges by the public, that it owes to the public the duty of exercising this franchise, and that it cannot divest itself of this duty without the consent of the public, and that, therefore, a lease not authorized by law does not excuse the lessor from liability for the breach of any of its public duties. Some of the cases even go so far as to hold that, where the lease is authorized by law, the same result follows, unless the statute expressly terminates the liability, but this is merely a construction of the statute, and not a modification of the principle. But even in the case of public service corporations, when the lease is unauthorized, the best considered cases hold that the lessor is not liable on the contracts of the lessee, or for injuries to its employees growing out of the relation of master and servant, for the reason that before there can be liability there must be a breach of duty, and the lessor is under no duty to perform contracts which persons have voluntarily made with the lessee. This subject is carefully considered in Elliott on Railroads (2d. Ed.) secs.

466, 472, where the authorities are collected.

Here, however, the Coal Company owed no duty to the public. If it was under the duty of operating the mine, it was by virtue of its contract with the owner of the land, and not by virtue of any duty it owed to the people of the state, and therefore, under the reasoning of these authorities which hold a lessor railroad company liable, this Coal Company would not be affected. The two cases, therefore, cited by counsel for plaintiff do not support his position for both these reasons: First, this is not a case where the Coal Company owed any duty to the public; and, second, this is a case where the obligation Henderson owed to the plaintiff grew out of the contract of employment, and not a breach of any public duty, had one existed. See, also, *Holden v. Lynn,* 30 Okla. 663, 120 Pac. 246, in which we discussed a somewhat similar principle, although it was in connection with a different state of facts.

For the reasons herein expressed, the case should be reversed and remanded for further proceedings in accordance with this opinion.

By the Court: It is so ordered.