**WASILOWSKI et al. v. PARK BRIDGE CORPORATION.**

No. 278, Docket 20195.

Circuit Court of Appeals, Second Circuit.

July 2, 1946.

Abraham L. Pomerantz, of New York City (William E. Haudek, of New York City, of counsel), for appellant.

Nathaniel Rubin, of Poughkeepsie, N. Y. (Samuel Mezansky, of New York City, of counsel), for appellees.

Before L. HAND, SWAN and CHASE, Circuit Judges.

SWAN, Circuit Judge.

This is an action for breach of contract brought in the federal court on the ground of diversity, the plaintiffs being citizens of Pennsylvania and the defendant a New York corporation. The contract sued upon was made by the plaintiffs with one Erich Voss. The action against Park Bridge Corporation is based on the theory that Voss was its agent and contracted on behalf of an undisclosed principal. This issue was left to the jury whose verdict decided it for the plaintiffs. The defendant has appealed. It contends that the court erred in denying its motion to direct a verdict in its favor. The sole question presented is whether there is evidence to support the jury's verdict.

In November, 1942, Erich Voss obtained from the United States Government a contract for the manufacture of 35,000 army service jackets. The government was to furnish the material and Voss was to do the cutting and sewing at a price of $3.54 for each jacket. The cutting was to be done at Voss's place of business and the sewing was to be performed by subcontractors. Erich Voss and his brother Max, who was associated with him in business, applied to the defendant for financing, as in similar earlier instances. Under date of November 19, 1942, a financing agreement in writing was entered into. In order to give better assurance that the defendant's advances would be used solely for the purposes of the government contract and not commingled with the funds of the Voss brothers, the advances were to be made to Max Voss, Inc., a corporation owned and controlled by Erich Voss. To this corporation the defendant agreed to advance "all sums necessary to meet contractors' bills, payrolls, rent, overhead and expenditures generally, appertaining to the execution of the Army contract." Max Voss, Inc., agreed to submit bills and vouchers substantiating any disbursements and to repay the advances with interest and a commission; and performance of its obligations was guaranteed by the Voss brothers and by another corporation wholly owned by them, known as Voss Clothes, Inc. As security Erich Voss assigned to the defendant all payments to become due from the United States under the jacket contract.

About the middle of January, 1943, the defendant discovered that Max Voss, Inc., had used $2,100 of the advances for purposes other than the government contract. It charged Max Voss, Inc., with a default under the terms of the financing agreement, demanded of Erich Voss and Voss Clothes, Inc., repayment of its advances which were approximately $80,000, and threatened to refuse to go on under the financing agreement. Discussions between the parties ensued. An agreement was proposed which the plaintiffs assert caused the defendant to assume complete ownership, dominion and control of the affairs of Erich Voss and Max Voss, Inc. But this agreement was rejected by the Voss Brothers and their attorney who insisted that the defendant carry out the original financing agreement. The $2,100 diversion was repaid and the defendant continued to finance Voss's jacket contract.

On February 8, 1943, Erich Voss employed the plaintiffs as a subcontractor in place of another who had shortly before asked to be released from further work. The contract was in writing, was drawn by Voss's attorney and made no mention of the defendant, and the latter knew nothing of it until after it was signed. By its terms the plaintiffs agreed to sew 15,000 service jackets and Voss agreed to pay them $3.25 per jacket. They sent their invoices to Voss and Voss submitted them to the defendant for payment under the financing agreement. The defendant drew checks to the order of the plaintiffs, bearing the notation "a/c Max Voss, Inc., and Erich Voss, loan against Gov't contract." Such checks totaled $47,508.50 which was within some $1,200 of the total amount payable under the plaintiffs' February contract. In April, 1943, Voss employed the plaintiffs as subcontractor to finish an additional 3,320 coats. It is under this new order that most of the plaintiffs' claim arises. There is no evidence that the defendant ever knew of this new order. In May, 1943, Max Voss informed the defendant

that neither he nor his brother nor their companies were able to pay the balance due the defendant. Thereupon the defendant refused to make further advances. At about this time the plaintiffs made several deliveries of jackets to the Government for which the defendant as assignee of Erich Voss thereafter received payment from the Government. Bills for such deliveries were sent by the plaintiffs to Erich Voss but were not paid. In November, 1943, plaintiffs brought the present action; they claim $7,582.25 plus interest to be due under their subcontract.

■ It is perfectly clear that under the financing agreement of November 19, 1942, the relation between Erich Voss and the defendant was that of debtor and creditor, not that of agent and principal. It was the ordinary factoring agreement in which the borrower does not act as the factor's agent in performing the contract with the purchaser of his goods. Indeed, the plaintiffs do not claim otherwise. Their theory is that the dealings between the Vosses and the defendant during January, 1943, so changed their relations that the defendant became the undisclosed principal in the contracts of February and April. In considering this contention the plaintiffs are of course entitled to every reasonable inference in their favor which the evidence will permit. See Berry v. United States, 312 U.S. 450, 452, 61 S.Ct. 637, 85 L.Ed. 945.

■ If the party to a factoring agreement informs his factor that he abandons the contract which is being financed and will proceed no further in performing it, and if the factor then sees fit to try to protect the advances he has already made by taking over completion of the contract in the name of such party, it may be conceded that the former factor will become the undisclosed principal in any subcontract which may be entered into by the party he formerly financed who has now become his agent. But this change in relationship does not occur so long as the party whom the factor was financing retains any interest in the contract and has not abandoned its completion. An agent is "a person authorized by another to act on his account and under his control." A. L. I. Restatement, Agency, § 1, Comment (d); Dickerson v. Rogers, 114 N.Y. 405, 410, 21 N.E. 992. If the party who was being financed retains an interest in the profits or losses which may result from completing the contract, pro tanto he will not be the factor's agent but will be acting for his own account. The evidence is conclusive that the Vosses never abandoned all interest in completion of the government contract.

The witnesses to the January discussions and transactions were Wallach, Meyer, Weltz and Goldstein. The latter's testimony throws no light upon this issue; and Meyer's deposition does not help the plaintiffs. Nor does Wallach's testimony lend credibility to the theory that the Vosses ever disclaimed all interest in the contract and consented to act merely as agents of the defendant. He did say that they declared that they could not pay the $80,000 of advances, but he also testified that he did not know that they were insolvent. The part of his testimony which the plaintiffs particularly stress is his statement that "It was part of our understanding with Mr. Voss" that the defendant should make the payments that it did make to the plaintiffs. This, however, added nothing to the factoring agreement itself, which required the defendant to "advance to Voss, Inc., all sums necessary to meet contractors' bills * * * appertaining to the execution of the Army contract." The fact that the defendant, after having become suspicious that advances made to Max Voss, Inc., might be improperly diverted, insisted upon making the payments direct to subcontractors and employees, did not change the nature of the advances. Finally, the testimony of Weltz, the Vosses' lawyer, completely cuts the ground from under the plaintiffs, for it shows that instead of surrendering all their interest in the jacket contract and consenting to act as the defendant's agent to complete it, they were very insistent in protecting their interests in it. Thus when Meyer and Wallach suggested that they would take over the contracts themselves "and handle them without Voss or Max Voss, Inc.," Weltz answered

that they could not "virtually throw my clients out," and threatened to get an injunction, if they attempted it. He told them that all future advances would be "amply protected," and that completion of the contract would reduce the debt owed to the defendant to a point where the chattel mortgage it held would wipe out any loss. To this Mr. Wallach answered that he wanted "complete supervision"; "nothing done without our approval"; and "to handle the money." To these changes in procedure under the factoring agreement Weltz agreed. He did not agree that the Vosses would put in $5,000 as requested by Mr. Wallach, but this was not because they wanted to abandon the contract but because, as he said, they did not have the money. They were, however, able to restore to Max Voss, Inc., the $2,100 whose diversion had been discovered.

From the foregoing summary it appears that Weltz was bargaining for the preservation of the rights of the Vosses in the jacket contract; he was not making an agreement as to the terms on which they should act as the defendant's agents. He insisted that the defendant should not throw them out and take over for itself completion of the contract. He thought there was a profit in it of which they wished to get the benefit, thereby reducing their indebtedness to the defendant. We can discover no testimony whatever that the changes in procedures under the factoring agreement did more than increase the protection of the defendant in making its future advances. Perkins v. Huntington, 64 Hun 635, 19 N.Y.S. 71, affirmed on opinion below, 139 N.Y. 630, 35 N.E. 206, involved a situation closely analogous to the facts at bar, and holds that the factor's knowledge of the insolvency of the other party to the factoring agreement does not make the factor a principal in contracts entered into by the other party. See also Waldie v. Steers Sand & Gravel Co., 2 Cir., 151 F.2d 129, 131; Kirby v. Lackawanna Steel Co., 109 App.Div. 334, 338, 95 N.Y.S. 833. The defendant's motion for a directed verdict should have been granted. Accordingly the judgment is reversed and the complaint dismissed.